2016 JUL 18 AM 9: 56


# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| In the Matter of the Estate of | No. 72758-3-I |
| RANDALL J. LANGELAND. | (Consolidated with No. 72759-1-I) |
| JANELL BOONE, | |
| Appellant/Cross-Respondent, | DIVISION ONE |
| v. | PUBLISHED OPINION |
| SHARON DROWN, | |
| Respondent/Cross Appellant. | FILED: July 18, 2016 |

LEACH, J. — In this second appeal, Janell Boone and Sharon Drown seek review of different decisions made by the trial court after remand from the first appeal. Boone contends that the trial court should have found that her father and Drown had a separate property contract. Alternatively, Boone claims that the trial court mischaracterized property, exceeded its authority when dividing property, and erred in awarding Drown attorney fees. Drown contends that the trial court should have required Boone's counsel to repay funds delivered to it from the court registry by the court clerk.

Because this court already decided as a matter of law that the property acquired during the Langeland/Drown relationship was joint property subject to

equitable division, we reject Boone's arguments about any separate property agreement under the law of this case. The trial court awarded Drown only joint property. Thus, it did not erroneously award her Langeland's separate property. Because Boone did not ask the trial court to include property that Drown acquired or held during the relationship until her motion to reconsider the trial court's order on remand, we decline to consider that challenge now. The trial court reasonably concluded that Boone's motion to reconsider lacked a foundation in fact or law. Thus, it did not abuse its discretion in awarding Drown attorney fees for defending that motion. But the trial court denied Drown restitution for attorney fees that Boone's counsel withdrew from the court registry based on untenable grounds. We reverse the trial court's restitution decision and remand for the trial court to enter judgment for Drown. Finally, we award Drown attorney fees for this appeal, as permitted by RCW 11.96A.150.

## FACTS

Sharon Drown and Randall Langeland shared a committed intimate relationship (CIR) from 1991 until Langeland's death in January 2009. The two lived together and shared household duties and expenses. They maintained separate bank accounts. They tracked their monthly expenses, from groceries to health insurance, and paid one another the difference at the end of each month.

Drown and Langeland bought a house in Bellingham in 1999. Langeland paid $148,500 of the $158,500 initial purchase price, and Drown paid the other $10,000. Drown signed a promissory note for $40,000 with seven percent interest in favor of Langeland. She also signed a deed of trust securing the note. The note required monthly payments, which Drown paid until 2008. Drown and Langeland paid equally the house expenses, including property taxes, improvements, and house maintenance. Due to Langeland's declining health, Drown had primary responsibility for upkeep and maintenance.

Langeland formed a software business, J. Randall & Associates, in 1994. Drown performed office work for the company from then until Langeland's death.

Drown and Langeland bought a sailboat together in 1998. To pay it off, in 2002 they took out a $65,000 equity loan secured by the house.[1]

Langeland became ill in 1998. From 2003 until his death, he required daily medication and care as his medical condition became more complicated. Drown cared for him. She also maintained the home and sailboat, while continuing to work full time.

---

[1] Along with the house (valued at $235,000.00), sailboat (sold for a net $75,250.00), and business (with $19,257.47 in assets), Drown and Langeland acquired the following during their CIR:
- An estate account containing $6,453.03
- A 2007 Toyota valued at $8,000.00
- 2002 Honda valued at $4,500.00
- Household personal property valued at $1,078.00

No. 72758-3-I (consol. with
No. 72759-1-I) / 4

Langeland died intestate in January 2009, survived by Drown and his daughter, Janell Boone. Each asserted claims against Langeland's estate. After a bench trial in May 2011, the trial court concluded that Drown owned half of the personal property listed as jointly owned in the estate inventory and was entitled to 24.7 percent of the house's sale proceeds. The court awarded Boone attorney fees from the estate.

Drown appealed. In October 2013, this court reversed in part and remanded. We held that the presumption that property a couple acquires during a CIR is jointly owned prevails over any presumption about the correctness of the estate inventory.[2] We further held that Boone failed, as a matter of law, to rebut the joint property presumption as to three contested assets, the house, sailboat, and proceeds from the software company.[3] We remanded for the trial court to reconsider the proper distribution of joint assets and the issue of attorney fees.[4]

On remand, the trial court entered amended findings of fact and conclusions of law (FFCL). The trial court found, consistent with this court's decision, that the assets Drown and Langeland acquired during the CIR were

---

[2] In re Estate of Langeland, 177 Wn. App. 315, 324, 312 P.3d 657 (2013), review denied, 180 Wn.2d 1009 (2014). Joint property is in most respects treated as analogous to community property for married couples. Connell v. Francisco, 127 Wn.2d 339, 351, 898 P.2d 831 (1995).
[3] Langeland, 177 Wn. App. at 327.
[4] Langeland, 177 Wn. App. at 331.

-4-

joint property. It further concluded that the contract regarding the house "was not executed by Drown or made freely, voluntarily and upon independent advice with full knowledge of her rights"; that Drown signed it without "full candor and sincerity" beforehand; and that Drown and Langeland did not follow the contract's terms.

The trial court awarded Drown half of the joint property assets. It also found that equity required it to distribute most of the estate's half of the joint property assets to Drown. This included the other half interest in the house, the company bank account, the estate bank account, a 2007 Toyota, and household personal property. The trial court awarded Boone the estate's half of the proceeds from sale of the sailboat and a 2002 Honda.

Boone challenges the amended FFCL. She asks this court to enforce the alleged agreement between Drown and Langeland to keep their property separate and their agreement about the house. She also asks this court to reverse the trial court's award of $9,187 to Drown for having to defend against Boone's motion to reconsider the amended FFCL.

Although the trial court awarded most of the estate assets to Drown on remand and vacated its $70,000 attorney fee award against her, it declined to order that Boone's counsel, Helsell Fetterman LLP, repay the funds it withdrew

No. 72758-3-I (consol. with
No. 72759-1-I) / 6

from the court registry to pay this award. Drown cross appeals, asking this court

to remand for the trial court to enter judgment against Boone and her counsel,

Helsell Fetterman.[5]

STANDARD OF REVIEW

We review the trial court's characterization of property a couple acquired

during a CIR de novo.[6] We review the trial court's fact findings for substantial

evidence, without weighing the evidence or making our own factual findings.[7]

We review the legal basis for awarding attorney fees de novo.[8] We then

review the trial court's discretionary decision to award attorney fees and the

reasonableness of the amount for abuse of discretion.[9]

---

[5] Excepting the house, deducting the estate's share of the Honda (which Drown apparently kept), and adding the supersedeas funds withdrawn by Helsell Fetterman and costs included in this court's mandate, the property the trial court awarded Drown totaled $67,714.33. Drown asks for this amount in her reply brief.

[6] See In re Marriage of Skarbek, 100 Wn. App. 444, 447, 997 P.2d 447 (2000).

[7] Prostov v. Dep't of Licensing, 186 Wn. App. 795, 819-20, 349 P.3d 874 (2015).

[8] Hall v. Feigenbaum, 178 Wn. App. 811, 827, 319 P.3d 61, review denied, 180 Wn.2d 1018 (2014).

[9] Hall, 178 Wn. App. at 827.

ANALYSIS

Law of the Case

As a preliminary matter, Drown contends that the law of the case doctrine bars Boone's challenges to the trial court's characterization of the contested assets as joint property. We agree. This court generally applies the law of the case doctrine to preclude successive reviews of issues that a party raised, or could have raised, in an earlier appeal in the same case.[10]

Boone contends that we did not consider, in the first appeal, the issues she raises here. She argues that this court decided only the correct presumption to apply and that Boone did not rebut that presumption by tracing the funds used to purchase the contested assets to Langeland's separate property. She contends that neither the separate property agreement nor the house agreement was at issue at trial or on appeal, so she should be allowed to assert them now.[11]

We disagree. The law of the case precludes her arguments about the separate property agreement and house agreement. We previously held that

---

[10] State v. Worl, 129 Wn.2d 416, 424-25, 918 P.2d 905 (1996).

[11] Arguing against Drown's motion for entry of judgment, Boone's counsel acknowledged that Boone had the motive and opportunity to present the contract issue on the first appeal, "I don't think that the Court of Appeals recognized [the separate property agreement] as an issue. It wasn't really addressed, and, frankly, that's on us." Counsel was incorrect that the issue was not addressed, but his concession is well taken: the contract argument was available to Boone on the first appeal.

"[a]s a matter of law, Boone failed to overcome the joint property presumption with respect to all three contested probate assets"—the business, house, and sailboat.[12] In doing so, we necessarily rejected the arguments Boone advances now, that the separate property agreement prevented Drown and Langeland from accumulating any joint property and that the alleged house agreement gave them separate interests in the house. Thus, we "actually decided"[13] the issues Boone now raises again.

Boone not only raises issues this court already decided, but she also reasserts the same arguments that she asserted in the prior appeal. Drown had challenged the trial court's finding that she and Langeland had a separate property agreement. In response, Boone argued, as she does now, that Drown and Langeland "manifested an intent to maintain the separate character of their property," and that "throughout their relationship, [they] split every expense equally between the two of them." Boone also argued, as she does now, that Drown and Langeland had a contract that established the house as separate property.

---

[12] Langeland, 177 Wn. App. at 327.
[13] Fluke Capital & Mgmt. Servs. Co. v. Richmond, 106 Wn.2d 614, 620, 724 P.2d 356 (1986).

-8-

The law of the case doctrine is discretionary, and Boone suggests it would be a "manifest injustice" not to enforce the purported agreements here.[14] But declining to enforce the asserted agreements does not "result in manifest injustice" because the equities heavily favor Drown. Also, Boone's arguments lack merit. First, if we were to reach the merits of Boone's separate property agreement claim, we would find that the record contains insufficient evidence to prove this agreement existed. An agreement to manage property separately is not the same as an agreement to convert property that is presumptively joint into separate property.[15] The evidence Boone identifies as proof of the alleged agreement proves, at most, an agreement to manage property separately. The record contains no evidence that Drown or Langeland intended or attempted to change the ownership of the property they acquired together.[16] Second, the record belies Boone's assertion that Langeland "carefully negotiated" the purported house agreement. Drown's testimony showed that she did not understand the terms or the purpose of the agreement Boone now asserts. Thus, substantial evidence supports the trial court's findings that that agreement

---

[14] See Roberson v. Perez, 156 Wn.2d 33, 41-42, 123 P.3d 844 (2005).

[15] In re Marriage of Mueller, 140 Wn. App. 498, 506-09, 167 P.3d 568 (2007) (holding that oral agreement "to divide the remainder of [ex-husband's] income after the payment of joint expenses" did not overcome presumption that assets were community property (emphasis omitted)).

[16] See Mueller, 140 Wn. App. at 507-08.

was not executed freely and voluntarily or with full candor and sincerity toward Drown. Additionally, the record contains no evidence that Drown and Langeland intended to convert their jointly owned earnings into separate interests in the house. No injustice results from our refusal to reconsider the alleged agreements here.

Langeland's "Separate Property"

Boone next contends that the trial court erred in concluding that it had "'the power to award Langeland's separate property to Drown'" and then awarding that "'separate property in its entirety to Drown.'"

Washington law "require[s] equitable distribution of property that would have been community property had the partners been married."[17] All the partners' joint property is subject to equitable division, regardless of which partner acquired it or holds title to it.[18] But Washington courts also recognize that because "equity is limited," the trial court may not distribute a partner's separate property.[19] This includes property the partner acquired before the relationship and property acquired "by gift, bequest, devise, or descent" during the relationship.[20]

---

[17] Olver v. Fowler, 161 Wn.2d 655, 668-69, 168 P.3d 348 (2007); see Connell, 127 Wn.2d at 350.
[18] Connell, 127 Wn.2d at 351.
[19] Olver, 161 Wn.2d at 668-69.
[20] Connell, 127 Wn.2d at 351.

The trial court thus could not award Langeland's separate property to Drown. The trial court's statement that it had the power to award Langeland's separate property in equity is wrong. Boone contends that upon Langeland's death, his interest in joint property became his separate property and was no longer subject to equitable distribution by the court. Our Supreme Court has rejected the argument that the death of one partner extinguishes the other partner's right to equitable distribution of that joint property.[21] The trial court awarded Drown only part of her and Langeland's joint property. It had the power to award that property to Drown in equity, and it did not abuse its discretion in doing so.[22]

### Joint Property Held by Drown

Next, Boone asserts that the trial court erred in ordering distribution of estate assets without considering property that Drown acquired during the CIR.

We agree that all of Drown and Langeland's jointly acquired assets were subject to equitable distribution, including those that Drown acquired or held title to.[23] However, Boone prepared the inventory of Langland's assets. This included his interest in joint property. As Boone acknowledges, the estate inventory here did not include Drown's assets. Boone did not challenge the

---

[21] Olver, 161 Wn.2d at 670-71.
[22] See Connell, 127 Wn.2d at 351.
[23] See Connell, 127 Wn.2d at 351.

-11-

inventory through trial, an appeal, and remand.[24] "Matters not urged at the trial

level may not be urged on appeal."[25] We therefore decline to consider Boone's

argument made for the first time in this second appeal.

Attorney Fees for Opposing Boone's Motion To Reconsider

After denying Boone's motion to reconsider its amended FFCL, the trial

court ordered Boone to pay Drown $9,187 for attorney fees under RCW

11.96A.150. Boone contends the trial court abused its discretion in doing so.

RCW 11.96A.150(1) gives the trial court discretion to award costs it

"determines to be equitable," including attorney fees to any party from another

party or the estate.

The trial court explained that Boone's motion asked it "to ignore the

binding Court of Appeals decisions in this case." It further explained that Boone's

motion contended that the court should not have issued its amended FFCL

without an evidentiary hearing, even though she had asked the court to enter her

own proposed FFCL without a hearing.

This court's opinion bound the trial court on remand. It followed that

opinion with its amended FFCL. Boone's motion for reconsideration merely

---

[24] Boone claims that on remand she asked the trial court to consider
Drown's jointly held assets before making a distribution. But she did so only in
her motion to reconsider after the trial court entered its amended FFCL.
[25] Lewis v. City of Mercer Island, 63 Wn. App. 29, 31, 817 P.2d 408
(1991).

repeated arguments that were unsuccessful before. The trial court did not abuse

its broad discretion in awarding Drown attorney fees under RCW 11.96A.150.

Restitution for Drown

Drown cross appeals. She claims that the trial court erred in denying

restitution of the estate funds withdrawn from the court registry and paid to

Helsell Fetterman for the now-vacated attorney fee award.

In June 2011, after Drown lost at trial, her counsel paid into the court

registry all the estate funds under his control.[26] In August 2011, the trial court

heard Boone's motion for $98,035.80 for fees and costs. It awarded $70,000.00,

but through a mistake failed to correct the amount in parts of Boone's proposed

order that it signed. As a result, the court directed its clerk to pay to Helsell

Fetterman $98,035.80 in attorney fees and costs from the court registry, "or as

much as is contained therein.[27] Helsell Fetterman, nonetheless, withdrew

---

[26] These included $75,240.97 from Drown's client trust account. With an added $23,525.85 from the estate checking account and J. Randall & Associates business account, the court registry contained $98,766.82 of estate funds as of June 9, 2011.

[27] The trial court judge crossed out Helsell Fetterman's proposed amount of attorney fees, $98,035.80, in some places but not in others. Boone's attorney acknowledged in the hearing that the amounts should be changed to $70,000.00. That is the amount the court stated at the hearing that it would award and the amount it found to be reasonable. Moreover, despite the literal meaning of the phrase "or as much as is contained therein," Boone offers no explanation why Helsell Fetterman would be entitled to the entire contents of the court registry regardless how large that amount was. Drown's reading of the order is more reasonable: had the registry contained less than Helsell Fetterman was

-13-

$101,498.82 from the registry on August 24, 2011.[28] The record provides no explanation why Helsell Fetterman did not return the excess funds to the clerk.

The trial court also ordered Drown to continue paying $683 per month into the court registry to supersede the judgment that the house belonged to the estate.[29] When this court remanded the case in October 2013, Drown had paid $28,003 into the registry as supersedeas. Because of Helsell Fetterman's withdrawal, however, the registry contained only $25,271. In her cross appeal, Drown asks for the $2,732 difference and an amount equal to the estate funds ultimately awarded to her by the trial court.

In the first appeal, we vacated the $70,000 fee award against Drown. Accordingly, Drown asked on remand that the trial court order restitution for the amount Helsell Fetterman withdrew.[30] The trial court denied Drown's request. It decided that she was not entitled to restitution under RAP 12.8 because she had

---

awarded, the order would have entitled Helsell Fetterman to the entire amount therein.

[28] Helsell Fetterman did not notify Drown or her counsel before withdrawing the funds or file a satisfaction of judgment afterward.

[29] The trial court did not order supersedeas for the attorney fees.

[30] In particular, Drown asked the trial court to award her $64,982.33 from Helsell Fetterman and Boone, consistent with this court's mandate and the trial court's FFCL on remand. She asked also that the trial court order Helsell Fetterman and Boone to return $2,732.00 of Drown's supersedeas funds, for a total of $67,714.33. She asked, alternatively, for a $67,714.33 judgment against Boone coupled with an order that Helsell Fetterman return the $101,498.82 to the court registry.

not paid any of the $70,000. The trial court further found that the record did not show that Helsell Fetterman lacked authority to withdraw estate assets from the court registry. It explained that Helsell Fetterman was acting pursuant to court order.[31] It further explained, in denying Drown's motion to reconsider, that the fees it authorized the clerk to pay Helsell Fetterman from the estate were to defend the estate against Drown's claims.

In addition to the missing supersedeas funds, Drown contends that Helsell Fetterman owes her $61,085.50, the portion of the withdrawn funds she says this court determined belonged to her. In the first appeal, we awarded Drown $3,896.83 for costs under RAP 14.4. Drown contends that the trial court thus erred in denying her a judgment of $67,714.33 plus 12 percent interest.[32]

This court reviews a trial court's decision about restitution under RAP 12.8 for abuse of discretion.[33] The rules of appellate procedure "'will be liberally interpreted to promote justice.'"[34] Restitution is an equitable remedy, and the trial court should award it "in appropriate circumstances" when a party "partially or

---

[31] That order "direct[ed] the attorney for the Personal Representative to withdraw the estate assets being held in the court registry and apply those assets to the fees and costs incurred by Helsell Fetterman, LLP, in defense of estate assets."

[32] This amount is the sum of $61,085.50, $3,896.83, and $2,732.00.

[33] Ehsani v. McCullough Family P'ship, 160 Wn.2d 586, 589, 159 P.3d 407 (2007).

[34] Sloan v. Horizon Credit Union, 167 Wn. App. 514, 520, 274 P.3d 386 (2012) (quoting RAP 1.2(a)).

-15-

wholly satisfied a trial court decision" that this court then modified or reversed.[35]

To identify "appropriate circumstances," Washington courts look to the common law of restitution as the Restatement of Restitution § 74 (Am. Law. Inst. 1937) describes it:[36] "'A person who has conferred a benefit upon another in compliance with a judgment . . . is entitled to restitution if the judgment is reversed or set aside, unless restitution would be inequitable or the parties contract that payment is to be final.'"[37] This rule is subject to an exception where restitution "would not serve the purpose of remedying unjust enrichment."[38]

In In re Marriage of Mason,[39] this court held that an ex-husband was entitled to restitution from his ex-wife's trial attorney after the attorney's fee award was reversed on appeal. The trial court originally ordered the ex-husband to pay the attorney directly, under RCW 26.09.140, and named the attorney as a judgment creditor.[40] Noting that the attorney was a "judgment creditor in his own

---

[35] RAP 12.8; Ehsani, 160 Wn.2d at 589.

[36] Ehsani, 160 Wn.2d at 590-91; State v. A.N.W. Seed Corp., 116 Wn.2d 39, 45-46, 802 P.2d 1353 (1991). In the current version of the Restatement, the relevant section is Restatement (Third) of Restitution and Unjust Enrichment § 18 (Am. Law. Inst. 2011).

[37] Ehsani, 160 Wn.2d at 592 (quoting RESTATEMENT OF RESTITUTION § 74).

[38] Ehsani, 160 Wn.2d at 592.

[39] 48 Wn. App. 688, 692-93, 740 P.2d 356 (1987).

[40] Mason, 48 Wn. App. at 691. The dissolution statutes provide, "The court may order that the attorneys' fees be paid directly to the attorney who may enforce the order in his or her name." RCW 26.09.140.

right" under that judgment, this court held that restitution under RAP 12.8 was appropriate.[41]

The Supreme Court clarified the scope of Mason in Ehsani v. McCullough Family Partnership,[42] where it held that an attorney was not liable in restitution for fees he had received as proceeds of a judgment that was later reversed. The trial court initially awarded the defendants judgment against the plaintiff, who paid the amount of the judgment into the client trust account of the defendants' attorney. Then, at the defendants' direction, that attorney distributed those funds to the defendants' creditors, including himself. The plaintiff successfully appealed the judgment. On remand, the plaintiff asked the trial court to order the attorney to return the fees as restitution.[43] The Supreme Court held that, unlike in Mason, these were not "appropriate circumstances" for restitution under RAP 12.8.[44]

The Supreme Court acknowledged the general rule that a person who has paid a judgment to another "is entitled to restitution if the judgment is reversed." But the court identified an exception to this rule that applies when restitution "would not serve the purpose of remedying unjust enrichment."[45] The court held

---

[41] Mason, 48 Wn. App. at 692-93.
[42] 160 Wn.2d 586, 588, 159 P.3d 407 (2007).
[43] Ehsani, 160 Wn.2d at 589.
[44] Ehsani, 160 Wn.2d at 593-94.
[45] Ehsani, 160 Wn.2d at 591-92.

this to be the case where a judgment creditor's attorney receives judgment proceeds from his client and retains them as payment for legal services. In this case, the court explained, that attorney "'received the money as a bona fide purchaser' . . . under the terms of a valid, preexisting agreement with the judgment creditor."[46] Thus, the clients (judgment creditors), but not the attorney, were liable in restitution under RAP 12.8.[47] The court explained, "Mason actually stands for the more limited proposition that an attorney paid pursuant to a statutory scheme making him a real party in interest may be liable in restitution for the amount of his fees when the trial court's favorable judgment is subsequently reversed."[48]

This court distinguished Ehsani when it affirmed a restitution award in Arzola v. Name Intelligence, Inc.[49] The trial court had decided that the amounts an employer owed its employees were wages and awarded the employees attorney fees under wage-claim statutes.[50] This court reversed that decision. On remand, the trial court awarded the employer restitution for the attorney fees. This court affirmed that restitution decision. We reasoned that the judgment was

---

[46] Ehsani, 160 Wn.2d at 593 (quoting RESTATEMENT OF RESTITUTION, § 74, cmt. h), 595.
[47] Ehsani, 160 Wn.2d at 595.
[48] Ehsani, 160 Wn.2d at 596.
[49] 188 Wn. App. 588, 594, 355 P.3d 286 (2015).
[50] Arzola, 188 Wn. App. at 591; RCW 49.52.

not paid directly to the attorney's client trust account, as in Ehsani, but instead "itself awarded attorney fees to the lawyers as part of a statutory scheme."[51] We noted that the trial court erred by awarding fees under the statute. We reasoned that it would be inequitable to make the employer bear the cost of the employees' attorney fees.[52]

Here, the trial court abused its discretion in refusing to order restitution for the vacated attorney fee award. First, Boone and the trial court are incorrect that Drown did not pay any of the $70,000 judgment against her. Whether the funds Helsell Fetterman withdrew came from the court registry or Drown's bank account, the record shows that Boone, Drown, and the trial court all understood the attorney fee award to be a transfer from Drown to Boone.[53] Because the trial court finally determined on remand that Drown owned the majority of the estate assets, most of the money Helsell Fetterman withdrew from the court registry in August 2011 belonged to Drown.

Second, Boone and the trial court are also incorrect that the registry's payment to Helsell Fetterman was an administrative expense of the estate. Helsell Fetterman did not represent the estate at any time when the firm was

_____

[51] Arzola, 188 Wn. App. at 594.

[52] Arzola, 188 Wn. App. at 594.

[53] For instance, in moving for the fees, Boone claimed she "should be allowed to pay her attorneys the incurred fees and costs out of the Court Registry now, pending deposit of said fees and costs by Sharon Drown into the registry."

accruing the awarded fees and costs. The court revoked Boone's letters of administration in February 2009. It appointed Carol Lenington personal representative. She hired separate counsel, Brian Hansen. Boone asserts that a brief exchange of letters with Hansen gave Helsell Fetterman authority to defend the estate. But those letters cannot reasonably be construed to state this: Hansen did not approve of Boone defending against any or all claims against the estate. He said only that the estate did "not object" to Boone's seeking recoupment of an IRA (individual retirement account).[54] Moreover, Hansen demanded that Boone hold the estate harmless for her attorney fees. Both Hansen and Lenington later attested that they did not request, approve, or receive notice that Helsell Fetterman would defend against Drown's claims or otherwise represent the estate. They added that they would not have approved this action had they known about it. Instead, Lenington noted, the only nonadministrator to work for the estate's benefit was Drown.

Thus, the record shows that Boone and Helsell Fetterman did not represent the estate between February 2009 and June 2011. The statutes the trial court cited to support its attorney fee award apply only to expenses for "a personal representative" and its attorney or to "costs of administration."

---

[54] Boone ultimately failed to recoup the IRA benefits from Drown, and the trial court excluded the fees she incurred in that effort from its award.

Therefore, the trial court erred in awarding the fees to Helsell Fetterman under RCW 11.48 and 11.76.[55]

Boone nonetheless contends that Ehsani precludes restitution here. She contends Mason does not apply because Helsell Fetterman did not receive payment directly from Drown under a statutory scheme making the firm a real party in interest.

Again, we disagree. Helsell Fetterman, like the attorney in Mason, received attorney fees through a court order directing that the fees be paid to it under statutes providing for attorney fees to be paid directly to the attorney.[56] This made the firm a "real party in interest" in the Ehsani court's words. The trial court directed the clerk to pay the fees directly to Helsell Fetterman, not to a client trust account as in Ehsani. As in Arzola, the trial court's statutory basis for the fees was wrong.[57]

Finally, it would be inequitable to allow Helsell Fetterman to keep Drown's supersedeas funds or the assets the trial court determined belong to Drown.[58]

---

[55] RCW 11.48.050 provides that an estate's personal representative "shall be allowed all necessary expenses in the care, management, and settlement of the estate." RCW 11.48.210 allows "just and reasonable" compensation for a personal representative and its attorney. RCW 11.76.110 provides for "payment of costs of administration" before payment of any other debts of an estate.

[56] See RCW 11.48.050, 210; RCW 11.76.110.

[57] See Arzola, 188 Wn. App. at 594.

[58] See Arzola, 188 Wn. App. at 593-94.

The trial court allowed Helsell Fetterman to withdraw $31,498.82 based on a clerical error, then declined to remedy that error. Helsell Fetterman offers no reasonable justification for keeping these funds. This court vacated the $70,000.00 fee award, which, in any case, the trial court had based on the false premise that Boone and Helsell Fetterman represented the estate. Allowing Helsell Fetterman to keep those funds would deny Drown the practical benefit of her successful appeal and cause her to pay her unsuccessful opposing party's legal expenses. Drown, who shared her life with Langeland and cared for him during nearly a decade of illness, would receive nothing from the estate except Langeland's half of the house. Restitution is meant to remedy just this type of unfairness.[59]

## CONCLUSION

The law of this case precludes Boone's two main arguments, as this court previously held that she failed to overcome the joint property presumption with respect to the contested assets. Boone's remaining arguments lack merit. We reverse the trial court's denial of Drown's restitution request because the trial court based its conclusion that Drown is not entitled to restitution on untenable grounds. We therefore remand for the trial court to enter judgment for Drown

---

[59] See Young v. Young, 164 Wn.2d 477, 484, 191 P.3d 1258 (2008) (notions of fairness and justice require recovery when a party would be unjustly enriched).

-22-

with an interest rate in accord with RCW 4.56.110(4).[60] And considering the

same equities that compel restitution for Drown, we award Drown attorney fees

for this appeal.[61]

Leach, J.

WE CONCUR:

_____

_____

---

[60] See Arzola, 188 Wn. App. at 595 ("An award of prejudgment interest is appropriate where a party retains funds rightly belonging to another party and thereby denies the party the use value of the money."). Although the trial court has discretion to reduce the maximum interest rate, it would abuse that discretion to do so without setting forth adequate reasons. See In re Marriage of Harrington, 85 Wn. App. 613, 631, 935 P.2d 1357 (1997).

[61] See RCW 11.96A.150.