

IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| In re the Matter of the Marriage of | ) | |
| | ) | No. 36751-7-III cons. with |
| KIMBERLY ANNE BARTLETT, | ) | No. 36810-6-III |
| | ) | |
| Respondent, | ) | |
| | ) | UNPUBLISHED OPINION |
| and | ) | |
| | ) | |
| DOUGLAS ALAN BARTLETT, | ) | |
| | ) | |
| Appellant. | ) | |
| | ) | |

FEARING, J. — Douglas Bartlett appeals the property division, a spousal

maintenance order, and a child support order entered in his marital dissolution action.

Because the dissolution court did not abuse its discretion in its rulings, we affirm the

court.

FACTS

Douglas Bartlett and Kimberly Bartlett began cohabitating in 2003. The couple

bore a son in 2004 and a daughter in 2006. Douglas and Kimberly intermarried on July

1, 2006 in Spokane.  Kimberly, a trained beautician, quit her job as a hair designer on the birth of the son in 2004.

In 2003, Douglas Bartlett formed Bartlett, LLC, a business that purchases and sells used automobiles.  Bartlett, LLC held title to Douglas and Kimberly Bartlett's vehicles, motor homes, and boats, among other personal property.  Kimberly did not know of ownership of these assets in the limited liability company until she separated from Douglas in 2017.

Beginning in 2013, the Bartlett family lived on S. Dishman-Mica Rd. outside of Spokane.  The two also owned an adjacent, five-acre lot on Dishman-Mica Rd.  At trial, Douglas and Kimberly agreed that the value of the family home was $475,000 and the value of the neighboring property was $145,000.  Bartlett, LLC owned and leased to renters an earlier family home at 9908 E. Holman Rd.

In 2016, Douglas Bartlett refinanced the family residence.  At that time, Douglas told Kimberly the refinancing sum was $140,000.  After separating from Douglas, Kimberly learned that he refinanced the residence for $400,000, which increased the house payment from $1,800 to $2,500 per month.  At the time of trial, the couple owed $385,153 on the family home.

In 2016, the Internal Revenue Service (IRS) imposed a $58,721.16 tax lien on the Dishman-Mica Road family residence for taxes.  At trial, Douglas Bartlett expressed no concern about this lien and protested that he would retire the lien.

2

After separation from Douglas in 2017, Kimberly Bartlett worked part-time as an assistant cook for Spokane Valley's Central Valley School District, a hairdresser, and a house cleaner. At trial, Kimberly averred that she could earn $1,841 per month, although she earned less than that amount then. She estimated that monthly expenses for her and the two children totaled $6,420.

The parties disputed the value of the ongoing business, Bartlett, LLC. Douglas Bartlett hired CPA Steven Kessler, and Kimberly retained the services of CPA Scott Martin. Kessler valued Bartlett, LLC at $1,089,000. Martin valued the business at $1,334,412.

During his testimony at trial, accountant Steven Kessler mentioned two shareholder loans owed to Bartlett, LLC. Kessler valued the loans at $97,250 and $78,730 respectively. Kessler refused to count the loan values in the valuation of Bartlett, LLC:

> [O]ne asset this business had was a shareholder loan receivable of $175,000 [the rough value of the two loans combined].
> . . . *So when I do a net tangible asset, I treat that as zero because the reality is no shareholder is ever going to repay it and so I make it a zero*.

Report of Proceedings (RP) at 398-99 (emphasis added).

During trial, the parties also disputed the amount of Douglas Bartlett's income. Douglas and Kimberly Bartlett's 2016 tax return reported an adjusted gross income of

3

$278,037. Their 2015 joint tax return listed an adjusted gross income of $321,823. All of the income came from Douglas' work in the used car field.

In a November 6, 2018 financial declaration, Douglas Bartlett estimated his gross annual income to be $157,000, or about $13,000 per month. At trial, Kimberly's expert, Scott Martin, estimated Douglas' 2017 gross income to be $137,722. Douglas' expert Steven Kessler, instead of testifying to Douglas' income, estimated the "market rate compensation" for Douglas' services at $135,000. RP at 419.

From September 2017 to April 2018, Douglas Bartlett wired international bank transfers in the total sum of $1,500,000. In 2017 and 2018, Douglas took petty cash draws from Bartlett, LLC in the tens of thousands of dollars.

Steven Fitch, a former employee of Douglas Bartlett, testified at trial that Douglas started Spokane County Biodiesel, a company for which Fitch served as the chief financial officer. According to Fitch, Douglas sold the business in 2012 for $900,000.

PROCEDURE

On November 1, 2017, Kimberly Bartlett filed a petition for dissolution. The matter proceeded to a trial beginning in December 2018.

At the conclusion of the trial, the dissolution court awarded the family home, located on S. Dishman-Mica Rd., to Kimberly Bartlett. The court awarded the other two parcels of real property, on S. Dishman-Mica Rd. and E. Holman Rd., to Douglas Bartlett. The court awarded a multitude of vehicles, some furniture, and the Washington

4

Trust Bank and Banner Bank accounts to Douglas. The dissolution court awarded two vehicles, a mountain bike, and $15,000 in other property, to Kimberly.

In its oral ruling, the dissolution court accepted Kimberly Bartlett expert's valuation of Bartlett, LLC at $1,334,412. In its later written findings of fact and conclusions of law, however, the court adopted Douglas Bartlett expert's valuation of the limited liability company at $1,089,000. The trial court characterized the ownership interest in the limited liability company as Douglas' separate property and awarded the entire interest in the business to Douglas. The dissolution court ordered Douglas to pay all community debts, including the mortgage and the IRS tax lien on the family home.

In its oral ruling, the dissolution court commented on the equitable nature of its division of property:

> [T]he Court finds a number of properties, and even though they were listed as part of the LLC, the Court did pierce the veil so to speak to a limited degree in ascertaining whether these were really community or separate assets. *Perhaps a better way of phrasing is that the distribution decisions of the Court are fair regardless of characterization.*

RP at 533 (emphasis added).

The dissolution court imputed $1,841 of gross monthly income to Kimberly Bartlett on the assumption that she could earn that amount by working full-time. The court rejected Douglas Bartlett's estimate of gross monthly income of $13,000 per month and instead imputed his income at $18,000. The court explained:

5

It is very difficult to ascertain the Respondent's income because he controls the income history he draws from the LLC. He has a unique business, and he really dictates what his salary is and it can vary widely. The Court finds Respondent has the ability to generate significant income.

Clerk's Papers (CP) at 331.

Based on the standard calculation for child support, the dissolution court ordered Douglas Bartlett to pay $876 per month for each of the parties' two children, totaling $1,752 per month. The court also ordered Douglas to pay Kimberly Bartlett $3,500 per month in spousal maintenance for sixty months. The final divorce order reads: that "[s]pousal support will end . . . when either spouse dies or the spouse receiving support gets married or registers a new domestic partnership." CP at 350. In finding of fact and conclusion of law 13, the court justified spousal support:

Spousal support should be ordered . . . due to the length of the marriage, Ms. Bartlett's reliance on the community, the change in her life patterns prior to the relationship and during the marriage for the benefit of the community and because of mutual decisions of the spouses. Ms. Bartlett is a stay-at-home mother, and that was a joint decision as evidenced by the behavior of the parties. The parties' lifestyle. *Ms. Bartlett has a need for maintenance. Mr. Bartlett certainly has the ability to pay. Mr. Bartlett has significant earning potential.*

CP at 341-42 (emphasis added). In finding of fact and conclusion of law 22, the dissolution court explained further:

The Court finds that Mr. Bartlett has considerably better earning potential than Ms. Bartlett. Part of this is because the husband will be receiving his corporation business in tact after this divorce, and he can continue earning a good living there, and Ms. Bartlett has primarily been a

6

> stay at home Mom.  The court also finds that this is an 11-year marriage, there was not a committed intimate relationship prior to marriage.
>
> The main property item in this case was and is Bartlett LLC.  *This LLC was used and interacted in such close proximity to the community, that it would be unjust not to consider that in the overall distribution of property and debts.  It would be unfair to Ms. Bartlett not to consider that in the distribution of property and in awarding maintenance.*  This is one of many reasons why Ms. Bartlett is, for example, being awarded the family home and Mr. Bartlett is being assigned the debt on that home—which is an effort to make this decision an equitable decision considering both community and separate property and debts.
>
> *Regardless of the valuation of the LLC and its character, the distribution of assets and debts is fair and equitable.*  The children were also considered in this distribution since, for example the family home is the children's primary residence and the wife has been the primary parent.  The distribution, along with the award of debts and maintenance will assist Ms. Bartlett in the family residence and a similar life style as before the divorce.

CP at 343 (emphasis added).

In April 2019, one month after entering the dissolution decree, the dissolution court entered an order requiring Douglas Bartlett to pay Kimberly's attorney fees in the amount of $48,250.  The court found that Kimberly

> *incurred fees and costs and needs help to pay those fees and costs. The other spouse has the ability to pay fees* and costs and should be ordered to pay the amount as listed in the final order.  The court finds that the amount ordered is reasonable.

CP at 342 (emphasis added).

In September 2019, after Douglas Bartlett moved for reconsideration of the dissolution court's decision, the court clarified part of its previous ruling.  The court

7

explained that Douglas need not immediately retire the mortgage and tax lien on the

family residence, which property it granted to Kimberly.

> The IRS Tax Lien must be paid off or removed within 5 years from the date of this order. Alternatively, if the IRS commences foreclosure proceedings on the lien, the Respondent must pay the obligation so that the Petitioner does not lose her home. With regard to the mortgage, the Petitioner may bring a motion to require full payoff back to the court in 5 years from the date of this order. At that time, the court will review the circumstances of the parties and determine whether payoff in full is appropriate.

CP at 505 (emphasis added).

## LAW AND ANALYSIS

On appeal, Douglas Bartlett challenges the dissolution court's calculation of assets

and liabilities, property distribution, computation of income, child support award, spousal

maintenance award, and Kimberly's attorney fee award. In short, Douglas challenges

everything. Douglas requests that this court vacate the dissolution court's various orders

and remand to a different judge to preserve the appearance of fairness.

### Property Distribution

Douglas Bartlett asserts that the dissolution court miscalculated assets and

liabilities, which resulted in an inequitable and unfair distribution of property and an

untenable spousal maintenance award.

At the time of dissolution, all property owned by the parties comes before the

court for a just and equitable distribution. RCW 26.09.080; *In re Marriage of Farmer*,

8

172 Wn.2d 616, 625, 259 P.3d 256 (2011). A just and equitable distribution need not be an equal distribution, but rather requires "fairness, based upon a consideration of all the circumstances of the marriage, both past and present, and an evaluation of the future needs of parties." *In re Marriage of Larson & Calhoun*, 178 Wn. App. 133, 138, 313 P.3d 1228 (2013). In crafting a just and equitable distribution plan, the trial court shall consider the nonexclusive factors listed in RCW 26.09.080:

> (1) The nature and extent of the community property;
> (2) The nature and extent of the separate property;
> (3) The duration of the marriage or domestic partnership; and
> (4) The economic circumstances of each spouse or domestic partner
> at the time the division of property is to become effective, including the
> desirability of awarding the family home or the right to live therein for
> reasonable periods to a spouse or domestic partner with whom the children
> reside the majority of the time.

As indicated by RCW 26.09.080, before distributing property, a trial court must characterize the property as either community or separate. *In re Marriage of Gillespie*, 89 Wn. App. 390, 399, 948 P.2d 1338 (1997). Assets acquired during marriage are presumptively community property. *In re Marriage of Short*, 125 Wn.2d 865, 870, 890 P.2d 12 (1995). Separate property is acquired either before marriage or after marriage by gift, bequest, devise or descent. RCW 26.16.010, .020); *In re Marriage of Short*, 125 Wn.2d 865, 870-71 (1995). Although courts generally award separate property to its owner, the trial court may award separate property to the other spouse. *In re Marriage of Larson & Calhoun*, 178 Wn. App. 133, 138 (2013).

9

This court will only reverse a trial court's property distribution in a marriage dissolution when the trial court abuses its discretion. *In re Marriage of Zier*, 136 Wn. App. 40, 45, 147 P.3d 624 (2006). A trial court abuses its discretion when it exercises it on untenable grounds or in an unreasonable manner, "namely, when the court 'relies on unsupported facts, takes a view that no reasonable person would take, applies the wrong legal standard, or bases its ruling on an erroneous view of the law.'" *Kelley v. Centennial Contractors Enterprises, Inc.*, 169 Wn.2d 381, 386, 236 P.3d 197 (2010).

A trial court's characterization of property as separate or community property is a question of law. *In re Marriage of Skarbek*, 100 Wn. App. 444, 447, 997 P.2d 447 (2000). This court reviews questions of law de novo. *In re Marriage of Herridge*, 169 Wn. App. 290, 297, 279 P.3d 956 (2012). If the trial court mischaracterizes the parties' property as separate or community property, this court "will not disturb the distribution of those properties if in [its] judgment that distribution is otherwise fair, just and equitable." *In re Marriage of Brady*, 50 Wn. App. 728, 732, 750 P.2d 654 (1988).

Douglas Bartlett first insists that the dissolution court accepted Kimberly Bartlett expert's valuation for Bartlett, LLC of $1,334,412, rather than his expert's correct valuation of $1,089,000. We would find no error if the court accepted Kimberly's valuation, but we disagree that the court did so. While the court initially accepted the higher valuation during its oral ruling, the court ultimately adopted Kessler's lower valuation in its findings of fact and conclusions of law. When a trial court's oral ruling

10

contradicts its written findings and order, the appellant may not use the oral ruling to impeach the court's findings or judgment. *Ferree v. Doric Co.*, 62 Wn.2d 561, 567, 383 P.2d 900 (1963).

Douglas Bartlett next argues that the dissolution court failed to recognize two shareholder loans owed to Bartlett, LLC, which failure led to a miscalculation of the company's value. We disagree. Contrary to Douglas Bartlett's contention, the dissolution court accounted for both shareholder loans. As mentioned, the court adopted the valuation of $1,089,000 prepared by Douglas's expert, Steven Kessler. Kessler's valuation excluded the shareholder loans. Because the court adopted Kessler's valuation, the court necessarily adopted his treatment of the shareholder loans.

Douglas Bartlett highlights that Bartlett, LLC owned most of the personal property, including vehicles, used by Kimberly and him. Douglas then insists, since the court characterized the limited liability company as his separate property, the court should have deemed the personal property to also be his separate property. Therefore, the dissolution court should have awarded all of the vehicles, motor homes, and boats to him without an offsetting award to Kimberly. We disagree.

To repeat, although courts generally award separate property to its owner, a trial court may award one spouse's separate property to the other when necessary for a just and equitable distribution. *In re Marriage of Larson & Calhoun*, 178 Wn. App. 133, 138 (2013). When a closely held company takes title to assets used by the company's owner

and his wife in their everyday affairs, the trial court does not err in awarding some of the company assets to the wife, even if the company remains the separate property of the owner. Douglas and Kimberly Bartlett in function utilized the separate property as community property. Any ruling by the court, other than awarding Kimberly some of the vehicles, might be unfair.

We conclude that the dissolution court did not abuse its discretion when dividing the parties' property even if the court may have mischaracterized some of the assets as community property rather than separate property. As stated by the trial court, the court would have divided the property similarly even if some of the property he characterized as community property was separate property.

The dissolution court awarded Kimberly Bartlett a residence with equity of $87,000 and other assets valued at less than $100,000. Douglas Bartlett received a business worth $1,089,000 and a real property lot worth $145,000. Thus, Douglas's awarded exceeded Kimberly's award five times. Douglas' income not only exceeded Kimberly's imputed gross monthly income of $1,841 by a significant margin, but his earning potential far exceeds Kimberly's potential.

Douglas Bartlett does not dispute the dissolution court's awarding of the family home to Kimberly Bartlett as her separate property. Nevertheless, he challenges the court's order directing him to pay the house's mortgage. He fails to explain why this order constitutes an abuse of discretion. The house mortgage payment increased from

$1,800 to $2,500 per month, due to Douglas' refinancing of the home for $400,000 in 2016, and Douglas never enlightened the court as whether the refinancing benefited Kimberly. Kimberly could not pay her expenses and the expenses of the children without Douglas paying the debt. For these reasons and because Kimberly's accrued income is substantially lower than Douglas, the dissolution court did not abuse its discretion when requiring Douglas to pay the parties' debts incurred prior to separation, including the family home mortgage.

Spousal Maintenance

Douglas Bartlett contends that the dissolution court erroneously and arbitrarily imputed his gross monthly income at $18,000. Douglas complains that this abuse of discretion resulted in an arbitrarily high spousal maintenance and child support award to Kimberly.

In awarding maintenance, the dissolution court exercises broad discretion. *In re Marriage of Washburn*, 101 Wn.2d 168, 179, 677 P.2d 152 (1984). Thus, this court will affirm the maintenance award absent an abuse of discretion. *In re Marriage of Wright*, 179 Wn. App. 257, 270, 319 P.3d 45 (2013). "The only limitation on the amount and duration of maintenance under RCW 26.09.090 is that the award must be 'just.'" *In re Marriage of Wright*, 179 Wn. App. 257, 269 (2013). RCW 26.09.090 emphasizes "the justness of an award, not its method of calculation." *In re Marriage of Washburn*, 101 Wn.2d 168, 182 (1984).

RCW 26.09.090(1) provides a nonexhaustive list of factors for the dissolution court to consider when awarding spousal maintenance:

> (a) The financial resources of the party seeking maintenance, including separate or community property apportioned to him or her, and his or her ability to meet his or her needs independently, including the extent to which a provision for support of a child living with the party includes a sum for that party;
> (b) The time necessary to acquire sufficient education or training to enable the party seeking maintenance to find employment appropriate to his or her skill, interests, style of life, and other attendant circumstances;
> (c) The standard of living established during the marriage or domestic partnership;
> (d) The duration of the marriage or domestic partnership;
> (e) The age, physical and emotional condition, and financial obligations of the spouse or domestic partner seeking maintenance; and
> (f) The ability of the spouse or domestic partner from whom maintenance is sought to meet his or her needs and financial obligations while meeting those of the spouse or domestic partner seeking maintenance.

Douglas Bartlett highlights that the trial court's imputation of his gross monthly income at $18,000 even exceeded the amount calculated by Kimberly's expert, Scott Martin. Martin estimated the income to be $11,435. We note that even Douglas admitted to a yearly income above Martin's testimony. Douglas declared income of $13,000 per month. Regardless, the trial court may always reject expert testimony in whole or in part. *Group Health Cooperative of Puget Sound, Inc. v. Department of Revenue*, 106 Wn.2d 391, 399, 722 P.2d 787 (1986); *Brewer v. Copeland*, 86 Wn.2d 58, 74, 542 P.2d 445 (1975).

The dissolution court imputed Douglas Bartlett's gross monthly income at $18,000, because Douglas controls the amount of money he withdraws from Bartlett, LLC. Douglas can manipulate his income by holding money received for his services within the limited liability company. The court recognized that Douglas enjoys "the ability to generate significant income." CP at 331.

The parties' 2015 and 2016 tax returns reported an adjusted gross income of $278,037 and $321,823 respectively. These figures exceed the amount of income the dissolution court attributed to Douglas Bartlett. From September 2017 to April 2018, Douglas sent more than $1,500,000 in international bank and wire transfers. In 2017 and 2018, he took money from the limited liability company labeled as "draws" and "petty cash" in the tens of thousands of dollars. In short, the trial court did not abuse its discretion when calculating, for purposes of spousal maintenance, the amount of Douglas' income. If anything, the dissolution court's calculation was low.

Douglas Bartlett maintains that he cannot afford to pay the court-ordered spousal maintenance of $3,500 per month. Nevertheless, financial records show otherwise. He claims that the dissolution court failed to conclude that maintenance was necessary to achieve a just and equitable property division. Yet, the property division is a distinct question from spousal maintenance. Douglas argues that the court failed to consider Kimberly's financial need before awarding her maintenance. The record shows that Kimberly garners only a low income that does not meet her and the children's expenses.

15

Douglas Bartlett characterizes the spousal maintenance award as indefinite, because the award lacks a provision stating it will terminate on remarriage. Nevertheless, the dissolution order declares that "[s]pousal support will end . . . when either spouse dies or the spouse receiving support gets married or registers a new domestic partnership." CP at 350.

## Child Support

For the same reasons that we conclude that the trial court did not abuse its discretion when calculating Douglas Bartlett's gross monthly income for purposes of spousal maintenance, we rule that the dissolution court did not abuse its discretion when making the same calculation for purposes of child support.

## Attorney Fees at Trial

Douglas Bartlett argues that the dissolution court erroneously ordered him to pay $48,250 of Kimberly's attorney fees, because the court entered no findings as to Kimberly's need or his ability to pay. Douglas does not challenge the reasonableness of the amount of the award.

This court reviews the trial court's legal basis for granting attorney fees de novo. *In re Estate of Langeland*, 195 Wn. App. 74, 82, 380 P.3d 573 (2016). This court reviews the court's decision of the amount of the award for an abuse of discretion. *In re Estate of Langeland*, 195 Wn. App. 74, 82 (2016).

16

RCW 26.09.140 authorizes the trial court to award attorney fees in marital dissolution actions. Before awarding attorney fees, the trial court must balance the needs of the spouse requesting them with the ability of the other spouse to pay. *In re Marriage of Morrow*, 53 Wn. App. 579, 590, 770 P.2d 197 (1989). Contrary to the contention of Douglas, the dissolution court found, based on sufficient evidence, that Kimberly needed assistance to pay her attorney fees and that Douglas possessed the ability to pay the fees.

Attorney Fees on Appeal

Kimberly Bartlett requests reasonable attorney fees on appeal on four grounds: (1) pursuant to RCW 26.09.140, based on her financial need and Douglas Bartlett's ability to pay, (2) pursuant to RCW 26.09.260(13), because Douglas brought this appeal in bad faith, (3) pursuant to RAP 18.9, based on Douglas' refusal to comply with the dissolution court's decree, and (4) based on Douglas' intransigence. Kimberly also requests sanctions pursuant to RCW 26.09.550.

We note that RCW 26.09.260 governs modification of a parenting plan or custody decree. RCW 26.09.260(13) requires this court to assess attorney fees and costs of the nonmoving part if it finds that "a motion to modify a prior decree or parenting plan has been brought in bad faith." RCW 26.09.550 governs sanctions in parental relocation matters. This appeal involves no modification of earlier plans or decrees or a request for relocation.

RCW 26.09.140 authorizes this court to award attorney fees on appeal:

17

>      Upon any appeal, the appellate court may, in its discretion, order a
> party to pay for the cost to the other party of maintaining the appeal and
> attorneys' fees in addition to statutory costs.

Determining whether a fee award is appropriate requires the court to consider the parties'

relative ability to pay.  The court should also examine the arguable merit of the issues

raised on appeal.  *In re Marriage of Leslie & Verhey*, 90 Wn. App. 796, 807, 954 P.2d

330 (1998).

With the successful ongoing business, Douglas Bartlett sits in a significantly better

financial position than Kimberly.  While Douglas' entire appeal may not be frivolous, he

asserts some thoughtless arguments, such as his contention that the dissolution court

valued Bartlett, LLC at $1,334,412.  Therefore, we award Kimberly reasonable attorney

fees and costs on appeal.  Because we award attorney fees and costs on appeal pursuant

to RCW 26.09.140, we decline to address whether to award fees under RAP 18.9(a) or

because of intransigence.

## CONCLUSION

We affirm all of the dissolution court's rulings.  We award Kimberly Bartlett

reasonable attorney fees and costs against Douglas on appeal.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

_____
Fearing, J.

WE CONCUR:

_____
Pennell, C.J.

_____
Staab, J.