[No. 61941-7. En Banc. July 20, 1995.]

SHANNON CONNELL, *Respondent*, v. RICHARD FRANCISCO, *Petitioner*.

340

*Kelly, Harvey & Martin,* by *H. Clarke Harvey* and *M. Douglas Kelly,* for petitioner.

*Edwards, Sieh, Wiggins & Hathaway,* by *Malcolm Edwards* and *Charles Wiggins,* for respondent.

*Cohen, Manni & Theune,* by *Jacob Cohen,* for respondent.

*Weber & Gunn,* by *Kenneth W. Weber,* amicus curiae.

GUY, J. — This case requires us to decide how property acquired during a meretricious relationship is distributed.[1]

## BACKGROUND

Petitioner Richard Francisco and Respondent Shannon Connell met in Toronto, Canada, in June 1983. Connell was a dancer in a stage show produced by Francisco. She resided in New York, New York. She owned clothing and a leasehold interest in a New York apartment. Francisco resided in Las Vegas, Nevada. He owned personal property, real property, and several companies, including Prince Productions, Inc. and Las Vegas Talent, Ltd., which produced stage shows for hotels. Francisco's net worth was approximately $1,300,000 in February 1984.

Connell, at Francisco's invitation, moved to Las Vegas in November 1983. They cohabited in Francisco's Las Vegas home from November 1983 to June 1986. While living in Las Vegas, Connell worked as a paid dancer in several stage shows. She also assisted Francisco as needed with his various business enterprises. Francisco managed his companies and produced several profitable stage shows.

In November 1985, Prince Productions, Inc., purchased a bed and breakfast, the Whidbey Inn on Whidbey Island, Washington. Connell moved to Whidbey Island in June 1986 to manage the Inn. Shortly thereafter Francisco moved to Whidbey Island to join her. Connell and Francisco resided and cohabited on Whidbey Island until the relationship ended in March 1990.

While living on Whidbey Island, Connell and Francisco were viewed by many in the community as being married. Francisco acquiesced in Connell's use of his surname for business purposes. A last will and testament, dated

---

[1]We recognize that historically, the term "meretricious" had a demeaning connotation. *Peffley-Warner v. Bowen*, 113 Wn.2d 243, 246 n.5, 778 P.2d 1022 (1989). Today the word is a term of art and conveys a clear and specific legal meaning, and we will therefore continue to use it. It is important for courts to maintain continuity of terms over time so that legal research is not impeded by changing well-recognized terms.

December 11, 1987, left the corpus of Francisco's estate to Connell. Both Connell and Francisco had surgery to enhance their fertility. In the summer of 1986, Francisco gave Connell an engagement ring.

From June 1986 to September 1990, Connell continuously managed and worked at the Inn. She prepared breakfast, cleaned rooms, took reservations, laundered linens, paid bills, and maintained and repaired the Inn. Connell received no compensation for her services at the Inn from 1986 to 1988. From January 1989 to September 1990, she received $400 per week in salary.

Francisco produced another profitable stage show and acquired several pieces of real property during the period from June 1986 to September 1990. Property acquired by Francisco included: a condominium in Langley, Washington, for $65,000; a waterfront lot next to the Inn for $35,000; property identified as the Alan May property for $225,000; real property identified as the restaurant property for $320,000; a house in Langley, Washington, for $105,000; and a condominium in Las Vegas, Nevada, for $110,000. In addition to the real property acquired by Francisco, Prince Productions, Inc., acquired two pieces of real property next to the Inn. Connell did not contribute financially toward the purchase of any of the properties, and title to the properties was held in Francisco's name individually or in the name of Prince Productions, Inc.

Connell and Francisco separated in March 1990. When the relationship ended, Connell had $10,000 in savings, $10,000 in jewelry, her clothes, an automobile, and her leasehold interest in the New York apartment. She continued to receive her $400 per week salary from the Inn until September 1990. In contrast, Francisco's net worth was over $2,700,000, a net increase since February 1984 of almost $1,400,000. In March 1990, he was receiv-

ing $5,000 per week in salary from Prince Productions, Inc.[2]

Connell filed a lawsuit against Francisco in December 1990, seeking a just and equitable distribution of the property acquired during the relationship. The Island County Superior Court determined Connell and Francisco's relationship was sufficiently long term and stable to require a just and equitable distribution. The Superior Court limited the property subject to distribution to the property that would have been community in character had they been married. The trial court held property owned by each party prior to the relationship could not be distributed. In addition, the Superior Court required Connell to prove by a preponderance of the evidence that the property acquired during their relationship would have been community property had they been married.

The only property characterized by the Superior Court as being property that would have been community in character had Connell and Francisco been married was the increased value of Francisco's pension plan. The increased value of the pension plan, $169,000, was divided equally, with $84,500 distributed to Connell. The Superior Court, concluding Connell did not satisfy her burden of proof with respect to the remaining property, distributed to Francisco the remainder of the pension plan and all real property.

The Court of Appeals reversed, holding both property owned by each prior to the relationship and property that would have been community in character had the parties been married may be distributed following a meretricious relationship. *Connell v. Francisco*, 74 Wn. App. 306, 317, 872 P.2d 1150 (1994). The Court of Appeals also ruled the analogous application of RCW 26.09.080 by the Superior Court to meretricious relationships would be meaningless without a community-property-like presumption attaching

---

[2]During the relationship Francisco was paid $490,548 in salary from Prince Productions, Inc. The Superior Court concluded Prince Productions, Inc., paid Francisco a reasonable salary for his services.

to all property acquired during the relationship. *Connell*, 74 Wn. App. at 320. The Court of Appeals remanded the case to the Superior Court.

Francisco petitioned this court for discretionary review. He argues property owned by each party prior to the relationship may not be distributed following a meretricious relationship, and a community-property-like presumption is inapplicable when a trial court distributes property following a meretricious relationship. We granted discretionary review.

## ANALYSIS

■ A meretricious relationship is a stable, marital-like relationship where both parties cohabit with knowledge that a lawful marriage between them does not exist. *In re Marriage of Lindsey*, 101 Wn.2d 299, 304, 678 P.2d 328 (1984); Harry M. Cross, *Community Property Law in Washington (Revised 1985)*, 61 Wash. L. Rev. 13, 23 (1986).

■ Relevant factors establishing a meretricious relationship include, but are not limited to: continuous cohabitation, duration of the relationship, purpose of the relationship, pooling of resources and services for joint projects, and the intent of the parties. *Lindsey*, 101 Wn.2d at 304-05; *Latham v. Hennessey*, 87 Wn.2d 550, 554, 554 P.2d 1057 (1976); *In re Marriage of DeHollander*, 53 Wn. App. 695, 699, 770 P.2d 638 (1989).

■ ■ In *Lindsey*, this court ruled a relationship need not be "long term" to be characterized as a meretricious relationship. *Lindsey*, 101 Wn.2d at 305. While a "long term" relationship is not a threshold requirement, duration is a significant factor. A "short term" relationship may be characterized as meretricious, but a number of significant and substantial factors must be present. *See Lindsey*, 101 Wn.2d at 304-05 (a less than two-year meretricious relationship preceded marriage).

The Superior Court found Connell and Francisco were parties to a meretricious relationship. This finding is not contested.

Historically, property acquired during a meretricious relationship was presumed to belong to the person in whose name title to the property was placed. "[I]n the absence of any evidence to the contrary, it should be presumed *as a matter of law* that the parties intended to dispose of the property exactly as they did dispose of it". *Creasman v. Boyle*, 31 Wn.2d 345, 356, 196 P.2d 835 (1948). This presumption is commonly referred to as "the *Creasman* presumption".

To avoid inequitable results under "the *Creasman* presumption", Washington courts developed a number of exceptions. *In re Estate of Thornton*, 81 Wn.2d 72, 79-81, 499 P.2d 864 (1972) (implied partnership); *Hennessey*, 87 Wn.2d 550 (implied partnership); *Humphries v. Riveland*, 67 Wn.2d 376, 407 P.2d 967 (1965) (constructive trust); *West v. Knowles*, 50 Wn.2d 311, 311 P.2d 689 (1957) (tracing source of funds); *Dahlgren v. Blomeen*, 49 Wn.2d 47, 298 P.2d 479 (1956) (contract theory); *Omer v. Omer*, 11 Wn. App. 386, 523 P.2d 957, *review denied*, 84 Wn.2d 1009 (1974) (constructive trust); *see generally* Washington State Bar Ass'n, *Community Property Deskbook* §§ 2.70-2.76 (1989).

■ In 1984, this court overruled *Creasman*. *Lindsey*, 101 Wn.2d at 304. In its place, the court adopted a general rule requiring a just and equitable distribution of property following a meretricious relationship.

> [W]e adopt the rule that courts must "examine the [meretricious] relationship and the property accumulations and make a just and equitable disposition of the property". *Latham v. Hennessey*, *supra* at 554. *Cf.* RCW 26.09.080. *See West v. Knowles*, *supra* at 320; *Poole v. Schrichte*, 39 Wn.2d 558, 569, 236 P.2d 1044 (1951). *Cf. Buckley v. Buckley*, 50 Wash. 213, 96 P. 1079 (1908).

*Lindsey*, 101 Wn.2d at 304.

In *Lindsey*, the parties cohabited for less than two years prior to marriage. When they subsequently divorced, the wife argued the increase in value of property acquired during the meretricious portion of their relationship was

also subject to an equitable distribution as if the property were community in character. We agreed, citing former RCW 26.09.080.[3] *Lindsey*, 101 Wn.2d at 304. The citation to former RCW 26.09.080, however, was preceded by the "*Cf.*" signal. The "*Cf.*" signal means: "Cited authority *supports a proposition different from the main proposition but sufficiently analogous to lend support*". Harvard Law Review Ass'n, *A Uniform System of Citation* 23 (15th ed. 1991).

The dispute in the present case arises from this court's reference in Lindsey to former RCW 26.09.080 by use of the "*Cf.*" signal. At issue is to what extent the principles contained in RCW 26.09.080 govern the disposition of property following a meretricious relationship.

■ Francisco contends the Court of Appeals misinterpreted Lindsey when it applied all the principles contained in RCW 26.09.080 to meretricious relationships. We agree. A meretricious relationship is not the same as a marriage. *Davis v. Department of Employment Sec.*, 108 Wn.2d 272, 278-79, 737 P.2d 1262 (1987) (an unmarried cohabitant is ineligible for benefits triggered by a "marital status" provision under Washington's unemployment compensation statute); *see also Western Community Bank v. Helmer*, 48

---

[3]Former RCW 26.09.080 provides:

"In a proceeding for dissolution of the marriage, legal separation, declaration of invalidity, or in a proceeding for disposition of property following dissolution of the marriage by a court which lacked personal jurisdiction over the absent spouse or lacked jurisdiction to dispose of the property, the court shall, without regard to marital misconduct, make such disposition of the property and the liabilities of the parties, either community or separate, as shall appear just and equitable after considering all relevant factors including, but not limited to:

(1) The nature and extent of the community property;

(2) The nature and extent of the separate property;

(3) The duration of the marriage; and

(4) The economic circumstances of each spouse at the time the division of property is to become effective, including the desirability of awarding the family home or the right to live therein for reasonable periods to a spouse having custody of any children". In 1989 the Legislature amended RCW 26.09.080, replacing "spouse having custody of any children" with "with whom the children reside the majority of the time". Laws of 1989, ch. 375, § 5, amending Laws of 1973, 1st Ex. Sess., ch. 157, § 8.

Wn. App. 694, 740 P.2d 359 (1987) (RCW 26.09.140, which permits an award of attorney fees in a marriage dissolution action, is inapplicable to an action to distribute property following a meretricious relationship); *Continental Casualty Co. v. Weaver*, 48 Wn. App. 607, 612, 739 P.2d 1192 (1987) (a person cohabiting in a nonmarital relationship with an insured is not a member of the insured's "immediate family"); *Roe v. Ludtke Trucking, Inc.*, 46 Wn. App. 816, 732 P.2d 1021 (1987) (under the wrongful death statute an unmarried cohabitant is not included within the statutory category of "wife"). *But see Warden v. Warden*, 36 Wn. App. 693, 698, 676 P.2d 1037, *review denied*, 101 Wn.2d 1016 (1984); *Foster v. Thilges*, 61 Wn. App. 880, 886, 812 P.2d 523 (1991). As such, the laws involving the distribution of marital property do not directly apply to the division of property following a meretricious relationship. Washington courts may look toward those laws for guidance.

■ ■ Once a trial court determines the existence of a meretricious relationship, the trial court then: (1) evaluates the interest each party has in the property acquired during the relationship, and (2) makes a just and equitable distribution of the property. *Lindsey*, 101 Wn.2d at 307; *Community Property Deskbook* § 2.64. The critical focus is on property that would have been characterized as community property had the parties been married. This property is properly before a trial court and is subject to a just and equitable distribution.

■ ■ While portions of RCW 26.09.080 may apply by analogy to meretricious relationships, not all provisions of the statute should be applied. The parties to such a relationship have chosen not to get married and, therefore, the property owned by each party prior to the relationship should not be before the court for distribution at the end of the relationship. However, the property acquired during the relationship should be before the trial court so that one party is not unjustly enriched at the end of such a relationship. *Peffley-Warner*, 113 Wn.2d 243, 252, 778

P.2d 1022 (1989). We conclude a trial court may not distribute property acquired by each party prior to the relationship at the termination of a meretricious relationship. Until the Legislature, as a matter of public policy, concludes meretricious relationships are the legal equivalent to marriages, we limit the distribution of property following a meretricious relationship to property that would have been characterized as community property had the parties been married. This will allow the trial court to justly divide property the couple has earned during the relationship through their efforts without creating a common-law marriage or making a decision for a couple which they have declined to make for themselves. Any other interpretation equates cohabitation with marriage; ignores the conscious decision by many couples not to marry; confers benefits when few, if any, economic risks or legal obligations are assumed; and disregards the explicit intent of the Legislature that RCW 26.09.080 apply to property distributions following a marriage.

Francisco argues that the Court of Appeals erred in requiring the application of a community-property-like presumption to property acquired during a meretricious relationship. We disagree.

In a marital context, property acquired during marriage is presumptively community property. *In re Marriage of Short*, 125 Wn.2d 865, 870, 890 P.2d 12 (1995). When no marriage exists there is, by definition, no community property. However, only by treating the property acquired in a meretricious relationship similarly can this court's reversal of "the *Creasman* presumption" be given effect. Failure to apply a community-property-like presumption to the *property acquired during a meretricious relationship* places the burden of proof on the nonacquiring partner. This would overrule *In re Marriage of Lindsey*, 101 Wn.2d 299, 678 P.2d 328 (1984) and reinstate the presumption expressed in *Creasman v. Boyle*, 31 Wn.2d 345, 196 P.2d 835 (1948). The Court of Appeals properly rejected the resurrection of "the *Creasman* presumption".

 We hold income and property acquired during a meretricious relationship should be characterized in a similar manner as income and property acquired during marriage. Therefore, all property acquired during a meretricious relationship is presumed to be owned by both parties. This presumption can be rebutted. *See Estate of Madsen v. Commissioner of Internal Revenue*, 97 Wn.2d 792, 796, 650 P.2d 196 (1982). All property considered to be owned by both parties is before the court and is subject to a just and equitable distribution. *Lindsey*, 101 Wn.2d at 307. The fact that title has been taken in the name of one of the parties does not, in itself, rebut the presumption of common ownership. *See Lindsey*, 101 Wn.2d at 306-07; *Merritt v. Newkirk*, 155 Wash. 517, 520, 285 P. 442 (1930).

 For the purpose of dividing property at the end of a meretricious relationship, the definitions of "separate" and "community" property found in RCW 26.16.010-.030 are useful and we apply them by analogy. Therefore, property owned by one of the parties prior to the meretricious relationship and property acquired during the meretricious relationship by gift, bequest, devise, or descent with the rents, issues and profits thereof, is not before the court for division. All other property acquired during the relationship would be presumed to be owned by both of the parties.*See In re Marriage of Elam*, 97 Wn.2d 811, 816, 650 P.2d 213 (1982); *In re Marriage of Pearson-Maines*, 70 Wn. App. 860, 869, 855 P.2d 1210 (1993). Furthermore, when the funds or services owned by both parties are used to increase the equity or to maintain or increase the value of property that would have been separate property had the couple been married, there may arise a right of reimbursement in the "community". *See, e.g., Pearson-Maines*, 70 Wn. App. at 869-70; Harry M. Cross, *Community Property Law in Washington (Revised 1985)*, 61 Wash. L. Rev. 13, 61, 67 (1986). A court may offset the "community's" right of reimbursement against any reciprocal benefit received by the "community" for its use and enjoyment of theindividually owned property.

*See In re Marriage of Miracle*, 101 Wn.2d 137, 139, 675 P.2d 1229 (1984); Cross, at 70.

 In the case before us, the majority of real property was purchased during Connell and Francisco's meretricious relationship. This real property is presumed to be owned by both parties, notwithstanding the fact the real property is not held in both parties' names. Francisco may overcome this presumption with evidence showing the real property was acquired with funds that would have been characterized as his separate property had the parties been married.

With respect to any real property found by the trial court to be owned by Francisco, Connell may establish that any increase in value of Francisco's property occurred during their meretricious relationship and is attributable to "community" funds or efforts. If Connell can establish Francisco's property increased in value due to unreimbursed community funds or efforts, then there arises in the "community" a right of reimbursement for those contributions. Any such increase in value would be before the trial court for a just and equitable distribution. To the extent one, or both, of the parties received a fair wage for their efforts, the "community" may have already been reimbursed. Since these inquiries are factual, we leave their resolution to the trial court.

## CONCLUSION

In summary, we hold that property which would have been characterized as separate property had the couple been married is not before the trial court for division at the end of the relationship. The property that would have been characterized as community property had the couple been married is before the trial court for a just and equitable distribution. There is a rebuttable presumption that property acquired during the relationship is owned by both of the parties and is therefore before the court for a fair division.

We reverse the Court of Appeals in part, affirm in part,

and remand the case to the Superior Court for a just and equitable distribution of property.

DURHAM, C.J., and SMITH, JOHNSON, MADSEN, ALEXANDER, and TALMADGE, JJ., concur.

UTTER, J.* (dissenting) — I disagree with the majority's conclusion that the Court of Appeals misinterpreted our decision in *In re Marriage of Lindsey*, 101 Wn.2d 299, 678 P.2d 328 (1984) when it applied the principles found in RCW 26.09.080 to meretricious relationships. By limiting the distribution of property following a meretricious relationship to property that would have been characterized as community property had the parties been married, the majority establishes a new rule that will be uncertain in application and will likely interfere with the ability of the courts to "make a just and equitable distribution of the property" as is required by *Lindsey*. Given the increasing number of these cases in our trial courts, what is needed in this context is a simple rule that is easy to apply. Our holding in *Lindsey*, as understood by the Court of Appeals, does just that.

The majority is correct in pointing out that a meretricious relationship is not the same as a marriage. In citing a number of cases in which this court has refused to treat them the same, however, the majority fails to realize that the question of how closely these two types of relationships are treated depends upon the context. We discussed *Lindsey* in *Davis v. Department of Employment Sec.*, 108 Wn.2d 272, 737 P.2d 1262 (1987), a case in which we held that an unmarried cohabitant is not eligible for benefits triggered by a "marital status" provision under our state's unemployment compensation statutes. There we noted that while *Lindsey* treated meretricious relationships like marriages in the context of property distribution, "the extension of property distribution rights of spouses to

---

*Judge Robert F. Utter is serving as a justice pro tempore of the Supreme Court pursuant to Const. art. IV, § 2(a) (amend. 38).

partners in meretricious relationships does not elevate meretricious relationships themselves to the level of marriages for any and all purposes". *Davis*, 108 Wn.2d at 279.

Thus, the Court of Appeals was correct in concluding that in *Lindsey* we did not interpret RCW 26.09.080 to include meretricious relationships. *Connell v. Francisco*, 74 Wn. App. 306, 315, 872 P.2d 1150 (1994). Such an interpretation, as the majority notes, would have ignored the explicit language of the statute. Instead, we adopted a common law rule applicable to meretricious relationships which mirrored the provisions of RCW 26.09.080 applicable to marriages.

Both the majority and the Court of Appeals note that in support of our holding in *Lindsey*, we cited RCW 26.09.080, preceded by the *"cf."* signal. The Court of Appeals' understanding of our *Lindsey* holding is consistent with our use of that signal in that case. RCW 26.09.080 does support a somewhat different proposition than what we held in *Lindsey*, but it is "sufficiently analogous to lend support". *The Bluebook: A Uniform System of Citation* 23 (15th ed. 1991) (defining the "cf." signal). The statute applies certain principles to property distribution following the dissolution of a marriage; *Lindsey* applies those same principles to property distribution following the dissolution of a meretricious relationship. The type of relationship is different, but the governing principles are the same. If, on the other hand, neither the type of relationship nor the applicable principles were the same, RCW 26.09.080 would not be "sufficiently analogous to lend support" to our *Lindsey* holding.

Finally, the rule articulated by the majority is likely to be difficult and uncertain in application. In many cases, it will be impossible to carry out the requirement of *Lindsey* that there be "a just and equitable distribution of the property" while limiting distribution to only that property that would be characterized as community property had the parties been married. The requirement that there be a court finding of a meretricious relationship prior to the

distribution of property is enough of a safeguard in these cases without the need to limit the type of property subject to distribution as the majority does. Additionally, the majority's rule, which will make the outcome of the property distribution depend upon how the court may characterize each individual piece of property, creates a great deal of uncertainty and makes the distribution unnecessarily complicated.

I, therefore, would affirm the opinion of the Court of Appeals in its entirety.

DOLLIVER, J., concurs with UTTER, J. Pro Tem.