166 P.3d 1230 (2007)
In the Matter of the PARTNERSHIP of Marcia "Marcy" RHONE (now Miller), Appellant, and
Wilbert D. BUTCHER, Respondent.
No. 25258-2-III.
Court of Appeals of Washington, Division 3.
September 6, 2007.
*1232 Timothy M. Coleman, Coke, Roth, Kennewick, WA, for Appellant.
Michael Thomas Kozlowski, Attorney at Law, Richland, WA, Janet G. Gemberling, Gemberling & Dooris PS, Spokane, WA, for Respondent.
SCHULTHEIS, J.
¶ 1 Marcia Rhone (now Miller) and Wilbert Butcher lived together in a meretricious relationship for 19 years. After separating, they agreed to divide Ms. Miller's state retirement account pursuant to a qualified domestic relations order (QDRO).[1] The court entered a stipulated decree awarding one-half of the retirement account to Mr. Butcher to be satisfied through a QDRO or other assets. After the parties discovered the account could not be divided pursuant to a QDRO, Ms. Miller claimed they never agreed to use other assets to satisfy the award. Reasoning that the original agreement was based on mutual mistake, the trial court awarded Mr. Butcher a judgment amount equal to one-half of the retirement fund to be satisfied in any manner. Ms. Miller appeals the order, contending the trial court departed from the terms of the original settlement agreement and erred in concluding that such agreement was void by mutual mistake. We reject her contentions and affirm.

FACTS
¶ 2 Marcia Miller and Wilbert Butcher lived in a meretricious relationship for approximately 19 years.[2] When their relationship ended, they agreed to divide the assets they had acquired together. In January 2004, the parties reached a settlement agreement. The provision at issue provided for the equal division of Ms. Miller's state teacher's retirement account pursuant to a QDRO. The value of the retirement account was approximately $150,000.
¶ 3 In May 2004, the court entered a stipulated decree of dissolution of meretricious relationship that provided in relevant part:
Petitioner is a teacher who has a Washington State Teacher's Retirement program, part of which are [sic] a defined benefits plan and part of which is a defined contribution plan. The defined contribution plan is in the nature of a 401(a) account and the Respondent is awarded a sum equal to one-half of said account which accrued from August 1, 1982, through November 26, 2001, plus or minus any increase or decrease to said amount to the date of distribution. Said amount shall be divided pursuant to a Qualified Domestic Relations Order or like order, if possible, and if not possible, will be satisfied from other assets. It is anticipated that the value of said account is approximately $150,000.00.
Clerk's Papers (CP) at 101.
¶ 4 At the hearing, Ms. Miller's attorney told the court there was some question whether the retirement account could be transferred to Mr. Butcher and objected to the substitution of other assets in the event the retirement fund could not be distributed pursuant to a QDRO. The parties agreed to *1233 continue the court's jurisdiction until they obtained more information.
¶ 5 In March 2005, Mr. Butcher requested an order allowing substitution of assets for the interest in the retirement plan that had been awarded to him. In July, Ms. Miller filed a CR 60 motion to correct the stipulated decree to conform to the settlement agreement, arguing the parties had never agreed that Mr. Butcher's share of the retirement fund could be satisfied from other assets. She produced a letter from the state retirement system stating that it could not split a member's retirement benefit unless there was a marriage.
¶ 6 At the September hearing on the issue, the court ruled that the parties' original agreement to divide the retirement plan through a QDRO was based on a mutual mistake, but because the parties had acceded to the court's continuing jurisdiction, it proposed an equitable resolution. Finding that Ms. Miller intended to give something having a value of approximately $50,000 after taxes, the court decided that Mr. Butcher was entitled to an award of that amount. The court left it to the parties to determine how the judgment could be satisfied. Ms. Miller's motion for reconsideration was denied.
¶ 7 On May 16, 2006, after counsel received updated information regarding the value of the retirement account, the court entered an order awarding Mr. Butcher a principal judgment amount of $78,400, with an adjustment for satisfaction of the judgment from pretax dollars.

ANALYSIS
¶ 8 Ms. Miller contends insufficient evidence supports the court's finding that the parties agreed that Mr. Butcher was entitled to one-half of the retirement fund and that substitute assets could be used to pay the amount. She also argues the court erred in concluding that the settlement agreement was void by mutual mistake. In response, Mr. Butcher argues that because the original agreement was based on a mutual mistake, the court properly modified the parties' original agreement to reflect their expectations.
¶ 9 We will not disturb the trial court's approval of a property distribution unless there is a clear and manifest abuse of discretion. Baird v. Baird, 6 Wash.App. 587, 591, 494 P.2d 1387 (1972). "Abuse of discretion does not exist unless it can be held that no reasonable person would have ruled as the trial court did." In re Marriage of Pilant, 42 Wash.App. 173, 176, 709 P.2d 1241 (1985).
¶ 10 "The division of property following the dissolution of a meretricious relationship must be just and equitable." In re Meretricious Relationship of Sutton, 85 Wash.App. 487, 491, 933 P.2d 1069 (1997) (citing In re Marriage of Lindsey, 101 Wash.2d 299, 304, 678 P.2d 328 (1984)). Once a trial court makes a determination that a meretricious relationship exists, it then: (1) evaluates the interest each party has in the property acquired during the relationship, and (2) makes a just and equitable distribution of the property. Lindsey, 101 Wash.2d at 304, 678 P.2d 328.
¶ 11 While the laws involving the distribution of marital property do not directly apply to the division of property following a meretricious relationship, our courts may look toward those laws for guidance. Connell v. Francisco, 127 Wash.2d 339, 898 P.2d 831 (1995). "[I]ncome and property acquired during a meretricious relationship should be characterized in a similar manner as income and property acquired during marriage. Therefore, all property acquired during a meretricious relationship is presumed to be owned by both parties." Id. at 351, 898 P.2d 831.
¶ 12 Additionally, RCW 26.09.070(3) provides that upon petition for dissolution, a separation agreement "shall be binding upon the court unless it finds, after considering the economic circumstances of the parties and any other relevant evidence produced by the parties on their own motion or on request of the court, that the separation contract was unfair at the time of its execution."
¶ 13 The record establishes that at the time they entered into their original agreement, both parties believed a share of Ms. Miller's retirement fund could be distributed to Mr. Butcher upon entry of a QDRO. *1234 The parties agreed on the record that "Mr. Butcher will receive a portion of that account, one half of that account." CP at 90. However, once it was discovered that Mr. Butcher could not receive his share of the retirement fund through a QDRO, the court likely did not find the distribution just and equitable. Accordingly, the court properly exercised its discretion in entering an order that provided for substitution of other assets to satisfy the award.
¶ 14 Ms. Miller counters that even if both parties were mistaken about whether the account could be divided pursuant to a QDRO, the court exceeded its authority by entering an order providing for satisfaction of the award from other assets. Mr. Butcher responds that because the original agreement was based on mutual mistake, the court properly modified the agreement to comport with the parties' original expectations.
¶ 15 A court may modify the terms of a contract on the basis of mistake. In re Marriage of Schweitzer, 132 Wash.2d 318, 327, 937 P.2d 1062 (1997). A mistake is a belief "not in accord with the facts." Simonson v. Fendell, 101 Wash.2d 88, 91, 675 P.2d 1218 (1984). "Equity may allow avoidance of a contract when both parties independently make a clear bona fide mutual mistake." Pub. Util. Dist. No. 1 of Lewis County v. Wash. Pub. Power Supply Sys., 104 Wash.2d 353, 362, 705 P.2d 1195, 713 P.2d 1109 (1985).
¶ 16 The elements of mistake are: (1) it must be held at the time the contract is made, (2) it must relate to a basic assumption of the contract, (3) it must have a material effect on the agreement, and (4) the party seeking avoidance must not have borne the risk of the mistake. Denaxas v. Sandstone Court of Bellevue, LLC, 148 Wash.2d 654, 668, 63 P.3d 125 (2003). "Basic assumption" means the mistake vitally affects the basis upon which the parties contract. Pub. Util. Dist. No.1, 104 Wash.2d at 362, 705 P.2d 1195. Where a purported agreement does not reflect a meeting of the minds, the courts should resolve such disputes in the way most likely to enforce the parties' expectations. Paradise Restaurant, Inc. v. Somerset Enters., Inc., 164 Vt. 405, 671 A.2d 1258, 1263 (1995) (citing 3 CORBIN ON CONTRACTS § 536(B), at 42 (1994 Supp.)).
¶ 17 The trial court properly found that the agreement was the result of mutual mistake. The settlement agreement reveals the parties' shared belief that Mr. Butcher was entitled to a share of Ms. Miller's retirement account. Mr. Butcher correctly notes, "In view of the substantial assets Ms. [Miller] would receive under the original agreement compared with the cash Mr. Butcher was to receive, it is clear that the availability of funds from the retirement account was a basic assumption underlying the original agreement." Resp't's Br. at 12-13. The record does not disclose any evidence that either party understood that the account would not be available for distribution. Ms. Miller admits she had no knowledge "that Mr. Butcher would not be able to receive a portion of my retirement account." CP at 16.
¶ 18 The record reveals that the parties intended to equally divide Ms. Miller's significant retirement account. However, they were both mistaken about how the account could be distributed. Because the original agreement was predicated on mutual mistake, the trial court did not abuse its discretion in entering an order that comported with the parties' original expectations.

CONCLUSION
¶ 19 Finding no error, we affirm.
WE CONCUR: SWEENEY, C.J., and BROWN, J.
NOTES
[1] A qualified domestic relations order enables a party to a dissolution to receive funds otherwise payable to the other party. See In re Marriage of Anderson, 134 Wash.App. 111, 138 P.3d 1118 (2006); In re Marriage of Knutson, 114 Wash. App. 866, 873, 60 P.3d 681 (2003).
[2] "A meretricious relationship is a stable, marital-like relationship where both parties cohabit with knowledge that a lawful marriage between them does not exist." Connell v. Francisco, 127 Wash.2d 339, 346, 898 P.2d 831 (1995).