# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| DAVID ROWE, | ) | No. 74659-6-I |
| | ) | |
| Appellant, | ) | DIVISION ONE |
| | ) | |
| v. | ) | |
| | ) | UNPUBLISHED OPINION |
| LONNIE ROSENWALD, | ) | |
| | ) | |
| Respondent. | ) | FILED: May 22, 2017 |
| | ) | |

LEACH, J. — David Rowe appeals the trial court's summary dismissal of the lawsuit he filed after he and Lonnie Rosenwald separated. Because their property settlement agreement is procedurally fair, and thus enforceable, and no question of fact exists about whether they ever legally married or when their relationship ended, we affirm and remand for further proceedings consistent with this opinion.

## FACTS

Rowe and Rosenwald began dating in 2008. Later that year, they became engaged, and Rowe gave Rosenwald an engagement ring. They began living together in January 2009. Soon after, they began discussing a property agreement.

Rosenwald hired an attorney, Lori Rath, to draft an agreement. At first, she believed that Rath could represent them both. But Rath corrected this

misunderstanding. Rosenwald then told Rowe that he needed to hire his own lawyer either to draft or review the agreement.

In May 2009, Rosenwald provided Rowe with a proposed agreement. Rowe had it reviewed by the attorney who had handled his divorce, Wolfgang Anderson. On Anderson's advice, Rowe refused to sign the agreement. Anderson sent Rath a letter in which he demanded that the agreement be changed to permit the creation of a community estate. Rosenwald would not agree to this change.

Over the next few months, the parties negotiated over the agreement's terms. In August 2009, they signed a temporary agreement. It stated that they had been negotiating the agreement in good faith but needed more time to finish the agreement. A few months later, they signed a final agreement.[1]

This agreement provides that each party shall own as that party's separate property all assets and debts acquired by that party before or during their relationship. The agreement requires that each party pay a share of household and living expenses. They established a joint bank account for the purpose of paying the shared living and household expenses. They agreed to contribute the same amount to the account each month. In addition, Rowe paid $730 per month as a "rental-type payment."

---

[1] Rosenwald signed the agreement on October 22, 2009. Rowe signed the agreement on November 21, 2009.

While Rowe acquired no ownership interest in Rosenwald's property, the agreement included a provision permitting Rowe to stay in Rosenwald's Mercer Island home if she died before he did.

The agreement also included provisions about handling the end of the relationship. Specifically, if the relationship ended, Rosenwald was to provide Rowe with funds to assist with the costs of moving to a new residence. The parties also agreed to engage in 10 joint counseling sessions before ending their relationship.

When the parties began their relationship, both were in their early- to mid-50s, were divorced, and had children from a previous marriage. When Rowe moved into Rosenwald's home, he was employed. He lost his job several months later. During negotiations and when the parties signed the agreement, Rowe remained unemployed, but he later found work and was employed for three years. He earned over $100,000 in 2008 and $78,000 in 2009, despite his period of unemployment. In following years, Rowe earned over $100,000 annually.[2] When he signed the agreement, he owed about $27,500 in credit card debt.

Rosenwald earned $370,000 in 2008. When she signed the agreement, her assets included her Mercer Island home, a second house on Whidbey Island,

_____

[2] Rowe earned $116,965 in 2010, $116,798 in 2011, and $112,232 in 2012.

and brokerage and retirement accounts with a combined value of over $1 million. She owed $195,000 for a mortgage on her Mercer Island home.

In July 2011, the couple had a ceremony and party to celebrate their commitment. They referred to the ceremony as a wedding in e-mails and on social media. But Rowe acknowledges that they never obtained a marriage license.

In June 2013, the parties ended their relationship. Rowe moved out of the Mercer Island home. He stayed in Rosenwald's Whidbey Island house until late-July. Rosenwald offered Rowe the $15,000 required by the agreement and asked him to sign a "Memorandum of Termination of Relationship." Rowe refused.

In February 2015, Rowe filed a petition for legal separation, seeking disposition of assets, spousal maintenance, and attorney fees. Rosenwald moved for summary judgment. She claimed that the property agreement precludes Rowe's claims. Rowe filed a countermotion seeking a declaratory judgment that the agreement is invalid and unenforceable. Rowe filed a second motion for declaratory relief, asking the court to find that a valid marriage existed between Rosenwald and Rowe.

The trial court found that reasonable persons could reach but one conclusion: that the agreement was "substantively and procedurally fair." Thus,

it granted Rosenwald's motion and awarded her attorney fees as authorized by the agreement. It entered a judgment against Rowe for over $87,000 for attorney fees and costs.

The court later denied Rowe's motion for reconsideration and granted Rosenwald's motion to strike the trial date without deciding whether the parties were married.

Rowe appeals the trial court's decisions to grant summary judgment for Rosenwald and strike the trial date.

## STANDARD OF REVIEW

We review summary judgment orders de novo, viewing all facts and reasonable inferences in the light most favorable to the nonmoving party.[3] We may affirm an order granting summary judgment on any basis supported by the record.[4] "Summary judgment is proper only when there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law."[5] "To defeat summary judgment, [the nonmoving party's] evidence must set forth specific, detailed, and disputed facts; speculation, argumentative assertions, opinions, and conclusory statements will not suffice."[6]

---

[3] Kellar v. Estate of Kellar, 172 Wn. App. 562, 573, 291 P.3d 906 (2012).
[4] Steinbock v. Ferry County Pub. Util. Dist. No. 1, 165 Wn. App. 479, 485, 269 P.3d 275 (2011).
[5] Kellar, 172 Wn. App. at 573.
[6] Sanders v. Woods, 121 Wn. App. 593, 600, 89 P.3d 312 (2004).

## ANALYSIS

### Enforceability of the Property Agreement

Washington law allows parties in either a marriage or a committed intimate relationship (CIR) to make an agreement that alters the status of their property.[7] Our Supreme Court has defined a CIR as a "stable, marital-like relationship where both parties cohabit with knowledge that a lawful marriage between them does not exist."[8] Absent a contrary agreement, our courts characterize and divide property acquired during a CIR in a similar manner to property acquired during a marriage and, thus, presume that all property acquired during a CIR is owned by both parties and subject to an equitable division.[9]

When negotiating a property agreement, the parties' relationship of mutual trust and confidence requires that they exercise the highest degree of good faith, candor, and sincerity.[10] To decide the validity of an agreement, our courts apply the two-pronged test described in In re Marriage of Matson.[11] This test requires

---

[7] In re Parentage of G.W.-F., 170 Wn. App. 631, 638, 285 P.3d 208 (2012).

[8] Connell v. Francisco, 127 Wn.2d 339, 346, 898 P.2d 831 (1995). Washington courts formerly described these relationships as "meretricious." But recognizing that term's negative connotation, the Supreme Court substituted the term "committed intimate relationship" in Olver v. Fowler, 161 Wn.2d 655, 657 n.1, 168 P.3d 348 (2007).

[9] Connell, 127 Wn.2d at 351.

[10] In re Marriage of Matson, 107 Wn.2d 479, 483-84, 730 P.2d 668 (1986); G.W.-F., 170 Wn. App. at 645.

[11] 107 Wn.2d 479, 482-83, 730 P.2d 668 (1986).

that the court first decide if the agreement is substantively fair.[12] An agreement is substantively fair when it makes reasonable provision for the party not trying to enforce it.[13] If the agreement is substantively fair, the inquiry ends.[14] If the agreement is substantively unfair, the court must then decide if it is procedurally fair.[15] When deciding if an agreement is procedurally fair, courts consider "(1) whether the spouses made a full disclosure of the amount, character, and value of the property involved and (2) whether the agreement was freely entered into on independent advice from counsel with full knowledge by both spouses of their rights."[16] An agreement is enforceable if it is either substantively or procedurally fair.[17]

Here, Rosenwald seeks to enforce the agreement. Thus, she has the burden of proving its validity.[18] Rosenwald has shown that no question of fact exists about the procedural fairness of the agreement. So the trial court properly decided to enforce it.

Rowe had independent counsel. He does not dispute that all assets and liabilities were fully disclosed. The parties negotiated several terms of the

---

[12] In re Marriage of Bernard, 165 Wn.2d 895, 902, 204 P.3d 907 (2009).
[13] Bernard, 165 Wn.2d at 902.
[14] Bernard, 165 Wn.2d at 902.
[15] Bernard, 165 Wn.2d at 902.
[16] Bernard, 165 Wn.2d at 902-03.
[17] Kellar, 172 Wn. App. at 585-56 (concluding that an agreement was valid after considering only procedural fairness).
[18] Kellar, 172 Wn. App. at 585.

agreement over the course of many months. The months of negotiations show that Rowe entered into the agreement voluntarily and intelligently, with a full understanding of the consequences of the agreement.[19] In addition, by signing it, Rowe acknowledged the agreement's provisions that it "is fair and equitable" and that he entered into it voluntarily. For these reasons, the agreement is procedurally fair.

Rowe asserts that the agreement was procedurally unfair because Rosenwald refused to negotiate the primary terms of the agreement she proposed and compromised only on minor terms. He relies on the court's statement in In re Marriage of Foran[20] that "[t]he purpose of independent counsel is more than simply to explain just how unfair a given proposed contract may be; *it is for the primary purpose of assisting the subservient party to negotiate an economically fair contract.*" But in Foran, the disadvantaged party did not have a lawyer, and the court described the importance of explaining to the nondrafting party the need for independent counsel.[21] Here, Rowe had independent counsel who explained to him the legal consequences of signing the agreement and advised him not to sign it. In addition, Rowe's counsel took action on behalf of Rowe when he sent a letter to Rosenwald's counsel demanding the contract

---

[19] Contra In re Marriage of Foran, 67 Wn. App. 242, 257, 834 P.2d 1081 (1992).
[20] 67 Wn. App. 242, 254, 834 P.2d 1081 (1992).
[21] Foran, 67 Wn. App. at 254-55.

permit the parties to build community property. The agreement is not procedurally unfair simply because Rosenwald did not acquiesce to this demand or because Rowe disregarded his counsel's advice.

Rowe also claims that the agreement is procedurally unfair because he signed it under economic and psychological duress. Specifically, he claims that he signed the document because Rosenwald took off her engagement ring and threatened to force him to move out if he did not sign. But these allegations do not show the agreement is procedurally unfair.

First, he claims that if forced to move out, he would have been homeless. But he did not provide evidence to support this claim, and his speculation is insufficient to defeat summary judgment.[22]

Next, Rowe relies on In re Marriage of Bernard[23] to show that Rosenwald's removal of her ring and threat to end the relationship created a procedurally unfair condition. Bernard does not support Rowe's position. Rowe claims the humiliation that he would have experienced by calling off the celebration coerced him into signing the agreement. But in Bernard, the disadvantaged party had only a few days to review the prenuptial agreement

---

[22] See Sanders, 121 Wn. App. at 600 ("To defeat summary judgment, . . . evidence must set forth specific, detailed, and disputed facts; speculation, argumentative assertions, opinions, and conclusory statements will not suffice.").

[23] 165 Wn.2d 895, 204 P.3d 907 (2009).

before the wedding date.[24] The proximity of the wedding date added to procedurally unfair conditions because she did not have adequate time to review the document.[25] Here, by contrast, the celebration did not take place until nearly two years after Rowe signed the agreement. Moreover, although Rosenwald removed the ring in August 2009 and wanted to end the relationship, she began wearing the ring again shortly afterward and was wearing the ring in October 2009 when she signed the agreement. Rosenwald removing her ring during negotiations, many months before the celebration, did not create a procedurally unfair condition like those described in Bernard.

Rowe's claim of duress also fails. First, he does not support it with any citation to relevant legal authority. Rowe cites cases that discuss the requirement that the parties act in good faith but make no mention of duress or coercion. We need not consider issues that a party does not support with citation to legal authority.[26] In the absence of adequate support, we need not consider Rowe's duress argument.

---

[24] Bernard, 165 Wn.2d at 906-07.
[25] Bernard, 165 Wn.2d at 906.
[26] Cowiche Canyon Conservancy v. Bosley, 118 Wn.2d 801, 809, 828 P.2d 549 (1992).

Moreover, his duress argument lacks merit. A party seeking to rescind a contract based on duress must prove this defense by clear, cogent, and convincing evidence.[27]

> To establish duress or coercion, there must be proof of more than reluctance to accept or financial embarrassment. The assertion of duress must be proven by evidence that the duress resulted from the other's wrongful or oppressive conduct. The mere fact that a contract is entered into under stress or pecuniary necessity is insufficient.[28]

Here, no evidence indicates any wrongful or oppressive conduct by Rosenwald.

Rowe also asks the court to consider whether the agreement is substantively unconscionable.[29] He admits that no Washington case has applied the test for unconscionability to property agreements between spouses or cohabitants but claims that it should apply as a general principle of contract law. Rosenwald objects, asserting that applying the substantive unconscionability test here would modify the Matson test, contravening 50 years of precedent. We do not need to decide whether this defense applies to property agreements because Rowe provided no evidence that the agreement is substantively unconscionable.

---

[27] In re Welfare of J.N., 123 Wn. App. 564, 576-77, 95 P.3d 414 (2004).

[28] Retail Clerks Health & Welfare Trust Funds v. Shopland Supermarket, Inc., 96 Wn.2d 939, 944, 640 P.2d 1051 (1982).

[29] See Adler v. Fred Lind Manor, 153 Wn.2d 331, 346-47, 103 P.3d 773 (2004) (holding that where a contractual provision is substantively unconscionable, it may be invalidated even though it was not procedurally unconscionable).

Because the agreement is procedurally fair, it is enforceable. The trial court properly concluded that the agreement governed disposition of the parties' property and thus precluded Rowe's claims.

### Striking the Trial Date

Rowe next contends that the trial court should not have stricken the trial date after deciding to enforce the agreement. He contends that material issues of fact continue to exist about whether the parties were legally married and when their relationship ended.

First, Rowe notes that if a jury concluded that they were married, he might be entitled to spousal maintenance and attorney fees.[30] He correctly points out that RCW 26.09.090 and RCW 26.09.140 grant the trial court discretion to award spousal maintenance and attorney fees in divorce or legal separation proceedings. And, unlike with community property division, no court has applied these statutes by analogy to CIRs.[31] Thus, we agree that Rowe's pursuit of maintenance and attorney fees depends upon him showing that he and Rosenwald were married.[32]

---

[30] Rowe cites Connell for the proposition that courts cannot award spousal maintenance in a CIR. In fact, that case involved disposition of assets and did not discuss maintenance. Connell, 127 Wn.2d at 349 (applying portions of RCW 26.09.080, governing distribution of property, to CIRs by analogy).

[31] Cf. Connell, 127 Wn.2d at 349; G.W.-F., 170 Wn. App. at 646-67.

[32] In re Kelly, 170 Wn. App. 722, 740-41, 287 P.3d 12 (2012).

Yet Rowe does not show a question of fact exists about whether he and Rosenwald were married. He provides evidence that they held a formal ceremony that they called a wedding during which they exchanged rings and vows. In addition, they indicated on their respective Facebook pages that they were "married." Rowe supplies several other examples of e-mails to friends and each other where the parties referred to the ceremony as a wedding or their relationship as a marriage. But Rowe admitted that they never obtained a marriage license and had no formal certificate. Thus, his claim ignores the body of case law that governs "marital-like relationship[s] where both parties cohabit with knowledge that a lawful marriage between them does not exist."[33] Here, the parties knew that they were not married. Their references to a "wedding" and representations on social media do not create a question of fact about whether they were ever married.

We characterize their relationship as a CIR and apply the law accordingly. Because they were never married, Rowe is not entitled to maintenance under RCW 26.09.090 or attorney fees under RCW 26.09.140.

Rowe also claims a trial is necessary to decide whether and when the relationship ended. If the relationship ended within five years of signing the agreement, Rosenwald owed Rowe $15,000. If the relationship ended more than

---

[33] Connell, 127 Wn.2d at 346.

five years after the agreement was signed, Rosenwald owed Rowe $30,000. The agreement also provides that the parties "will engage in joint counseling for a minimum of ten sessions before terminating the relationship." Rowe asserts that because evidence suggests that they did not complete these sessions, a question of fact exists about whether the relationship ever ended and, thus, whether Rosenwald owes him $30,000. Rosenwald does not discuss the counseling sessions, but she does assert that the relationship ended when Rowe moved out.

As the parties' actions show, they did not need to complete the counseling sessions for their relationship to end. "It is hornbook law that the law does not require a useless act."[34] Here, fulfilling the counseling provision would have been pointless. By discontinuing counseling sessions, the parties waived this provision. By their other actions, the parties established that the relationship was over.

No question of material fact exists, and no issues remain for a jury to resolve. The trial court properly struck the trial date.

### Fee Award

Finally, Rowe challenges the fee award. The court awarded Rosenwald $84,178 in attorney fees based on the agreement's "reasonable" attorney fees

---

[34] Franklin County Sheriff's Office v. Sellers, 97 Wn.2d 317, 334, 646 P.2d 113 (1982).

-14-

provision. Rowe asserts that any award is improper and, alternatively, that the amount of the award is unreasonable.

First, Rowe asserts that because Rosenwald should not have prevailed in her summary judgment motion, the court's award was improper. Appellate courts "review a party's entitlement to attorney fees as an issue of law de novo."[35] "The general rule in Washington is that parties may not recover attorney fees except under a statute, contractual obligation, or some well-recognized principle of equity."[36] RCW 4.84.330 mandates an award of reasonable attorney fees to the prevailing party where a contract so provides.[37] As explained in this opinion, Rosenwald properly prevailed below. Thus, the trial court correctly decided to award her fees under the agreement.

Second, Rowe challenges the reasonableness of the amount awarded. We review the amount of a fee award for abuse of discretion.[38] However, we cannot review the reasonableness of an award without findings of fact and conclusions of law.[39] The trial court must enter independent findings and conclusions to support an award of fees and cannot simply rely on the billing

---

[35] Harmony at Madrona Park Owners Ass'n v. Madison Harmony Dev., Inc., 160 Wn. App. 728, 739, 253 P.3d 101 (2011).

[36] Quality Food Ctrs. v. Mary Jewell T, LLC, 134 Wn. App. 814, 817, 142 P.3d 206 (2006).

[37] Singleton v. Frost, 108 Wn.2d 723, 729, 742 P.2d 1224 (1987).

[38] Quality Food Ctrs., 134 Wn. App. at 817.

[39] In re Marriage of Sanborn, 55 Wn. App. 124, 130, 777 P.2d 4 (1989).

records and pleadings of the prevailing party.[40] Here, the court awarded $87,378.88 for "fees and costs reasonably incurred" in the litigation but entered no findings of fact about the reasonableness of the award. This is insufficient to permit meaningful appellate review. We must remand for entry of supporting findings of fact and conclusions of law.

Both Rowe and Rosenwald request fees on appeal. "'A contractual provision for an award of attorney fees at trial supports an award of attorney fees on appeal.'"[41] As the prevailing party, we award Rosenwald fees incurred on appeal, with the amount to be determined by the trial court on remand.

## CONCLUSION

Because the parties' property agreement is procedurally fair, it is enforceable. Because no material question of fact remains to be decided at trial, the trial court properly struck the trial date. In addition, the trial court properly awarded fees to Rosenwald as the prevailing party. In those respects, we affirm

---

[40] Mahler v. Szucs, 135 Wn.2d 398, 435, 957 P.2d 632 (1998), overruled on other grounds by Matsyuk v. State Farm Fire & Cas. Co., 173 Wn.2d 643, 272 P.3d 802 (2012).

[41] Quality Food Ctrs., 134 Wn. App. at 818 (quoting Reeves v. McClain, 56 Wn. App. 301, 311, 783 P.2d 606 (1989)).

the trial court orders.  But we remand for entry of findings of fact about the award

of attorney fees and determination of fees on appeal.

_Leach, J._

WE CONCUR:

_Cox, J._                              _Becker, J._