# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| LORA PERRY , | DIVISION ONE |
| Appellant, | No. 77373-9-I |
| v. | UNPUBLISHED OPINION |
| KENNET PHILLIPSON, | |
| Respondent. | FILED: April 22, 2019 |

DWYER, J. — Lora Perry brought this action to divide the assets of a committed intimate relationship (CIR), specifically a house, that she owned with Kennet Phillipson. The trial court found that a CIR existed and that 94 percent of the equity in the home was CIR community property.[1] The trial court found that the date of the parties' separation was the most equitable date of appraisal for the house and further found that, on that date, the house was worth $560,000. Of that amount, $147,210 was equity, and $138,077 of the equity was community property of the CIR. The court evenly apportioned this to the parties, thus awarding Perry $69,038. Perry nevertheless appeals, contending that a later date of valuation should have been used and that Phillipson did not prove that 6 percent of the home's value was his separate property. Finding no error, we affirm.

---

[1] There is no true marital community in a CIR. Thus, the property is best described as "community-like" property. Because this phrase is awkward, we will refer to it as community property, notwithstanding the imprecision.

I

Lora Perry and Kennet Phillipson dated and lived together from 2011 to 2015. The parties first lived in a rented unit. They then jointly purchased a house in Bellevue in March 2013. Their relationship ended upon Phillipson's admission that he had been intimately involved with a former paramour for nearly the entire duration of his relationship with Perry. Perry moved out of their shared home on November 30, 2015.

Before Perry and Phillipson began dating, Phillipson had been an associate attorney in the law firm of Fox Bowman Duarte. Upon this firm's dissolution in December 2010, its partners paid Phillipson $50,000 to take on responsibility for several ongoing criminal cases, the fees for which had been paid up front. These fees were not held in trust but, rather, were Phillipson's upon his receipt of them. The record contains no evidence as to how long Phillipson took to conclude the various cases. Phillipson deposited $35,000 of the money in a Bank of America money market savings account.

The parties purchased the house for $485,000 by means of a mortgage. The down payment on the purchase, along with closing costs and mortgage insurance prepayment, totaled $58,558, of which $50,058 was contributed by Phillipson, $6,000 by Perry, and $2,500 by both parties through a joint checking account. At least $30,000 of Phillipson's contribution came from the payment made to him by Fox Bowman Duarte. Although both parties' names were on the title to the house, Phillipson was the sole obligor on the mortgage.

2

The parties' joint checking account was used for the payment of shared expenses, such as rent, utilities, mortgage payments, and home repairs, during the period of their cohabitation. Each party contributed to rental or monthly mortgage payments (based on a percentage of their monthly income) by depositing the needed funds in the joint account. Perry ceased contributing to mortgage payments after she moved out of the house.

Perry commenced this action on July 25, 2016. The only property at issue in the case was the CIR's equity in the house. Phillipson, pointing to his infidelity and to disagreements between the parties, disputed that the parties had ever been in a committed intimate relationship. Ultimately, the court ruled that a CIR had existed. Phillipson does not challenge this determination on appeal.

At trial, both parties offered appraisals of the home's value; however, each appraiser selected a different date for the valuation of the home. Phillipson's appraiser valued the house at $560,000 on November 30, 2015, the date on which Perry moved out; Perry's appraiser valued the house at $630,000 as of September 2, 2016, and $701,000 as of March 24, 2017. The trial court ruled that the date of separation—November 30, 2015—was the most appropriate date for the valuation of the home, noting that Phillipson maintained sole responsibility for mortgage, upkeep, and repairs of the property after that date.

The trial court, relying on Phillipson's appraisal, concluded that the house was worth $560,000 as of November 30, 2015. Subtracting the $412,790 balance on the mortgage, the equity in the house on this date was, the trial court found, $147,210. The trial court further found that 94 percent of this amount,

$138,077, was "an asset of the CIR." The trial court premised this ruling on evidence that Phillipson contributed $30,000 of his separate funds to the purchase of the home. Thus, the trial court reasoned, 6 percent of the home's value was Phillipson's separate property.

For her part, Perry requested an award of 60 percent of the CIR equity in the house on the basis that she was the "economically disfavored partner." The trial court ruled that, given the short duration of the relationship, an even split was more equitable. Thus, Perry was awarded $69,038, half of the CIR equity in the house. Because Phillipson had already paid Perry $10,000, the trial court entered a judgment in favor of Perry in the amount of $59,038. This judgment was satisfied in December 2017.

Perry appeals, contesting the choice of valuation date and the finding that 6 percent of the equity in the home was Phillipson's separate property.

II

Perry first contends that the trial court should have adopted a later date to value the house than the date of separation. Because the house appreciated in value after the parties separated, Perry avers that valuing the house as of the date of separation deprived the CIR of passive appreciation. We disagree. The choice of date of valuation was entirely within the trial court's discretion, and that discretion was not abused.

A committed intimate relationship "is not the same as marriage." Connell v. Francisco, 127 Wn.2d 339, 348, 898 P.2d 831 (1995). Thus, "the laws involving the distribution of marital property do not directly apply to the division of

property following a [CIR]." Connell, 127 Wn.2d at 349. "Once a trial court determines the existence of a [CIR], the trial court then: (1) evaluates the interest each party has in the property acquired during the relationship, and (2) makes a just and equitable distribution of the property." Connell, 127 Wn.2d at 349 (citing In re Marriage of Lindsey, 101 Wn.2d 299, 307, 678 P.2d 328 (1984)). In Connell, our Supreme Court limited the distribution of property following a meretricious relationship—that which is now known as a CIR—to property that "would have been characterized as community property had the parties been married," thus specifically excluding property acquired prior to the relationship from distribution. 127 Wn.2d at 350.

A trial court's division of property following a CIR is reviewed for abuse of discretion. In re Marriage of Byerley, 183 Wn. App. 677, 684-85, 334 P.3d 108 (2014). "A trial court abuses its discretion when its decision is manifestly unreasonable or based on untenable grounds or untenable reasons." In re Parenting & Support of L.H., 198 Wn. App. 190, 194, 391 P.3d 490 (2016). A trial court's decision is manifestly unreasonable if it is outside the range of acceptable choices considering the facts and applicable legal standard, it is based on untenable grounds if the factual findings are not supported by the record, and it is based on untenable reasons if it applies an incorrect standard or the facts do not meet the requirements of the correct standard. L.H., 198 Wn. App. at 194 (citing In re Marriage of Littlefield, 133 Wn.2d 39, 47, 940 P.2d 1362 (1997)).

In the same vein, courts evaluating CIR assets for the purpose of division have broad discretion to select a valuation date that is just and equitable. Koher v. Morgan, 93 Wn. App. 398, 404-05, 968 P.2d 920 (1998) (citing Lucker v. Lucker, 71 Wn.2d 165, 167-68, 426 P.2d 981 (1967)). The trial court, in its conclusions of law concerning the characterization and value of the house, stated:

> Considering all of the circumstances, the court has determined that the date of the termination of the CIR is the appropriate date for the appraisal. See Morgan v. [Briney], supra.[2] At all times, Phillipson had sole legal responsibility for the mortgage and, after November 30, [2015], he, alone, paid the mortgage and was responsible for all upkeep on the property—including substantial damage caused by trespassers.

Perry does not dispute that Phillipson paid all mortgage and upkeep expenses after the termination of their relationship. The trial court acted on reasonable and tenable grounds in selecting November 30, 2015 as the date of valuation.

The cases cited by Perry do not support the proposition that a trial court is required to account for passive appreciation to a CIR asset. Instead, these opinions stand for the proposition that the trial court may consider a variety of factors in arriving at the most equitable valuation date. See Koher, 93 Wn. App. at 404; In re Marriage of Sedlock, 69 Wn. App. 484, 490, 849 P.2d 1243 (1993); In re Marriage of Hurd, 69 Wn. App. 38, 46, 848 P.2d 185 (1993). Thus, courts may award passive appreciation by choosing a valuation date after the parties' separation; they also may choose not to do so. Morgan, 200 Wn. App. at 396.

---

[2] 200 Wn. App. 380, 396, 403 P.3d 86 (2017), review denied, 190 Wn.2d 1023 (2018).

6

Here, the trial court considered the array of circumstances presented to it. It properly exercised its discretion in utilizing a valuation date that it believed produced the most equitable result.

III

Perry next contends that the $50,000 in fees paid to Phillipson upon the dissolution of his former employer, Fox Bowman Duarte, should not have been found to be Phillipson's separate property. This is so, she asserts, because the fees represented payment for work Phillipson had not, at that time, completed, and that at least some of that work was completed during the period of time encompassed by the CIR.

The $50,000 paid to Phillipson represented flat fees for specified legal services in criminal cases. Thus, pursuant to Washington's Rules of Professional Conduct, the money was Phillipson's property at the time he received it.[3] The applicable rule provides:

> A lawyer may charge a flat fee for specified legal services, which constitutes complete payment for those services and is paid in whole or in part in advance of the lawyer providing the services. If agreed to in advance in a writing signed by the client, a flat fee is the lawyer's property on receipt . . . .

RPC 1.5(f)(2).

That Phillipson was obligated to perform some ongoing legal work after receiving these fees, and that some of this work may have been performed during the time Phillipson and Perry were in a CIR, did not alter the status of the

---

[3] Washington's Rules of Professional Conduct may be considered in civil cases so long as the purpose is not to determine malpractice liability. Cotton v. Kronenberg, 111 Wn. App. 258, 265, 44 P.3d 878 (2002) (citing Simburg, Ketter, Sheppard & Purdy, LLP v. Olshan, 97 Wn. App. 901, 909, 988 P.2d 467 (1999)).

money as Phillipson's separate property. Property is characterized as separate or community as of the date it is acquired. In re Marriage of Shannon, 55 Wn. App. 137, 140, 777 P.2d 8 (1989). Here, the $50,000 was acquired prior to the commencement of the CIR. Thus, it plainly was separate property.

Perry's assertion that Phillipson must have worked on some of these cases after the CIR commenced raises an issue—it does not prove a fact. Perry introduced no evidence that Phillipson did, in fact, work for no compensation to the CIR on any particular case or cases. She neither presented evidence of such work nor introduced evidence from which the value of such work could be quantified. Thus, the trial court's correct categorization of the funds as Phillipson's separate property remained unrebutted.

IV

Finally, Perry avers that the trial court abused its discretion by determining that 6 percent of the equity in the house was Phillipson's separate property. This is so, she contends, because the finding that Phillipson had adequately traced this equity to his separate funds was not supported by substantial evidence. We disagree. Phillipson provided documentary evidence demonstrating that approximately $30,000 of the funds put toward the purchase of the home came from money that had been in his separate account before the CIR commenced.

"[I]ncome and property acquired during a [CIR] should be characterized in a similar manner as income and property acquired during marriage. Therefore, all property acquired during a [CIR] is presumed to be owned by both parties." Connell, 127 Wn.2d at 351. This presumption may be overcome "by establishing

by 'clear and convincing proof' that the property is separate, i.e., by tracing with some degree of particularity the separate source of funds used for the acquisition." Chesterfield v. Nash, 96 Wn. App. 103, 111, 978 P.2d 551 (1999) (quoting Connell, 127 Wn.2d at 350-51), rev'd on other grounds by In re Marriage of Pennington, 142 Wn.2d 592, 14 P.3d 764 (2000).

"[O]nly when money in a joint account is hopelessly commingled and cannot be separated is it rendered entirely community property." In re Marriage of Skarbek, 100 Wn. App. 444, 448, 997 P.2d 447 (2000) (citing In re Marriage of Pearson-Maines, 70 Wn. App. 860, 866, 855 P.2d 1210 (1993)). "If the sources of the deposits can be traced and identified, the separate identity of the funds is preserved." Skarbek, 100 Wn. App. at 448 (citing Pearson-Maines, 70 Wn. App. at 867).

"'Commingling' of separate and community funds may give rise to a presumption that all are community property. This is not commingling in the ordinary sense, however; it must be hopeless commingling. Unlike the foregoing presumptions, this one is conclusive, arising only after the effort at tracing proves impossible." In re Marriage of Schwarz, 192 Wn. App. 180, 190, 368 P.3d 173 (2016) (footnote omitted).

At trial, Phillipson testified as to his use of the $50,000 he received in fees upon Fox Bowman Duarte's dissolution. First, in January 2011, he deposited this money into a checking account. After writing a $10,000 check to his new firm, he transferred $35,000 into his savings account and left the remaining $5,000 in his checking account.

9

As of February 28, 2013, his bank statement showed a balance of $30,694.32. Following two deposits, this balance increased to $48,619.41. Phillipson then transferred $25,000 to his checking account on April 16. Three days later, a $25,000 check from Phillipson was deposited by Stewart Title. On May 9, 2013, Phillipson transferred the remainder of the funds in his savings account to his checking account. That same day, he made a transfer of $25,058.58 from his checking account to Stewart Title.

There is no evidence that the deposits of $17,724 and $200 between February 28 and March 29, 2013, effected a hopeless commingling of community and separate funds. Before the home purchase, Phillipson had just over $30,000 in his savings account. He proved that this money was received from his former employer. He also proved that all of this money went toward the purchase of the house.

Phillipson was required only to trace the funds "'with some degree of particularity,'" and upon his doing so, he established a presumption that these funds remained separate property. Morgan, 200 Wn. App. at 390 (quoting Berol v. Berol, 37 Wn.2d 380, 382, 223 P.2d 1055 (1950)). "[T]he property retains the character of the funds used to purchase it. If one partner purchases property with separate funds during the CIR, the property is that partner's separate property." Morgan, 200 Wn. App. at 390 (citing Merritt v. Newkirk, 155 Wash. 517, 520-21, 285 P. 442 (1930)). Accordingly, the portion of the down payment made with Phillipson's separate funds gave Phillipson a separate property

10

interest. The trial court acted within its discretion in finding that 6 percent of the equity in the home was solely Phillipson's.

Affirmed.

We concur: